[No. A076464. First Dist., Div. Two. Apr. 9, 1998.]

In re T.A.J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
T.A.J., Defendant and Appellant.

COUNSEL

Cynthia A. Thomas and J. Bradley O'Connell for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan, Seth K. Schalit and Andrew E. Sweet, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RUVOLO, J.—

I.

Penal Code section 261.5, subdivision (b), makes it a misdemeanor for "any person" to have sexual intercourse with a minor who is no more than

three years older or younger than the perpetrator. Does this statute infringe a constitutional privacy right of minors to engage in consensual sexual intercourse? Is the statute unconstitutional as applied to appellant who was a minor himself at the time of the alleged offense, and therefore, an individual within the class of persons protected by the statute? In affirming the finding of the trial court determining appellant to be a ward of the court, we answer both questions in the negative.

## II.

A juvenile petition pursuant to Welfare and Institutions Code section 602 was filed on April 22, 1996, charging appellant T.A.J. with misdemeanor statutory rape in violation of Penal Code section 261.5, subdivision (b).[1] The petition alleged that 16-year-old T.A.J. engaged in an act of unlawful sexual intercourse with another minor no more than 3 years older or younger than himself on February 9, 1996. On July 5, 1996, the petition was amended by adding one count of forcible rape under section 261, subdivision (a)(2). A jurisdictional hearing was held on September 30 and October 2, 1996, at the conclusion of which the court found true the statutory rape allegation (count 1), and made no finding with regard to the forcible rape count (count 2). As a result, appellant was granted probation. This timely appeal was filed on November 19, 1996.

The incident out of which this case arises was an admitted act of sexual intercourse which occurred at the home of the 14-year-old female victim, T.P. The evidence need not be recounted in detail here. The disputed factual issue before the court at the jurisdictional hearing was simply whether that act was consensual. If consensual, appellant was at worst guilty of misdemeanor statutory rape (count 1, violation of § 261.5, subd. (b)). If nonconsensual, appellant faced a true finding on the forcible rape charge (count 2, violation of § 261, subd. (a)(2)). As noted, the court found only count 1 true, and therefore concluded the admitted act was consensual. Appellant does not contest this factual finding on appeal.

Instead, appellant contends that section 261.5[2] is unconstitutional both facially and as applied to him. His constitutional challenge to the statute rests on two arguments: first, that the statute violates his right to privacy guaranteed by the California Constitution, article I, section 1, and second, that the statute may not be constitutionally applied to him since he is a

---

[1] All further undesignated statutory references are to the Penal Code, unless otherwise noted.

[2] Section 261.5 states as follows:

"(a) Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor. For the purposes of this

member of the "protected class" as defined by the statute. (Cf. *In re Meagan R.* (1996) 42 Cal.App.4th 17 [49 Cal.Rptr.2d 325].) As a "victim," he may not also be prosecuted under the statute as a "perpetrator." For reasons set forth below, we reject both contentions.

## III.

## A.

We begin with an area of agreement between the parties. Both agree that minors, as well as adults, enjoy a right of privacy protected by the California Constitution in article I, section 1. That provision, which was amended significantly by the voters of California in 1972, states simply: "All people are by nature free and independent and have inalienable rights. Among these

section, a 'minor' is a person under the age of 18 years and an 'adult' is a person who is at least 18 years of age.

"(b) Any person who engages in an act of unlawful sexual intercourse with a minor who is not more than three years older or three years younger than the perpetrator, is guilty of a misdemeanor.

"(c) Any person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison.

"(d) Any person over the age of 21 years who engages in an act of unlawful sexual intercourse with a minor who is under 16 years of age is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison for two, three, or four years.

"(e)(1) Notwithstanding any other provision of this section, an adult who engages in an act of sexual intercourse with a minor in violation of this section may be liable for civil penalties in the following amounts:

"(A) An adult who engages in an act of unlawful sexual intercourse with a minor less than two years younger than the adult is liable for a civil penalty not to exceed two thousand dollars ($2,000).

"(B) An adult who engages in an act of unlawful sexual intercourse with a minor at least two years younger than the adult is liable for a civil penalty not to exceed five thousand dollars ($5,000).

"(C) An adult who engages in an act of unlawful sexual intercourse with a minor at least three years younger than the adult is liable for a civil penalty not to exceed ten thousand dollars ($10,000).

"(D) An adult over the age of 21 years who engages in an act of unlawful sexual intercourse with a minor under 16 years of age is liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000).

"(2) The district attorney may bring actions to recover civil penalties pursuant to this subdivision. From the amounts collected for each case, an amount equal to the costs of pursuing the action shall be deposited with the treasurer of the county in which the judgment was entered, and the remainder shall be deposited in the Underage Pregnancy Prevention Fund, which is hereby created in the State Treasury. Amounts deposited in the Underage Pregnancy Prevention Fund may be used only for the purpose of preventing underage pregnancy upon appropriation by the Legislature."

are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

The parties diverge, however, in their respective views as to whether the right of privacy for minors is as extensive as it is for adults, and in particular whether minors' privacy rights include the right to engage in consensual sexual intercourse.[3] Appellant claims consensual sexual conduct is a core right of personal "autonomy" which attaches to all persons and which may be infringed by the Legislature only in the presence of a compelling state interest. Under the applicable test of "strict scrutiny," appellant urges no such compelling state interest exists sufficient to deprive him of his right to engage freely in consensual sexual conduct. Respondent retorts that the right of privacy enjoyed by minors has not been defined as broadly as it has for adults, and in many instances has specifically been limited. Therefore, respondent argues that the right of privacy applicable to minors does not encompass the right of minors to engage in consensual sexual intercourse with each other. Alternatively, respondent asserts that even if a right to engage in sex falls within a minor's right of privacy, there are indeed state interests which outweigh the limitation on that right imposed by section 261.5, subdivision (b).

Undoubtedly, the most comprehensive analysis governing constitutional challenges under the state right of privacy is last year's Supreme Court opinion in *American Academy of Pediatrics* v. *Lungren* (1997) 16 Cal.4th 307 [66 Cal.Rptr.2d 210, 940 P.2d 797] (*American Academy*).[4] The majority recited its view as to the proper methodology to be employed when evaluating claims of the type asserted in this appeal, citing from *Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*):[5] " '[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.' [Citation.] 'A defendant may prevail in a state constitutional privacy case by negating any of the three elements just discussed or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests.' [Citation.] The court [in *Hill*] further explained that

---

[3]Neither side disputes that *adults* have such a right under the California Constitution.

[4]A four-to-three decision yielding a plurality opinion, one concurrence, and three separate dissents.

[5]*Hill* was a four-to-three decision consisting of a majority opinion, two separate concurring and dissenting opinions, and one dissent.

'[t]he plaintiff, in turn, may rebut a defendant's assertion of countervailing interests by showing there are feasible and effective alternatives to defendant's conduct which have a lesser impact on privacy interests.' [Citation.]" (*American Academy, supra*, 16 Cal.4th at p. 330, fn. omitted.)

The court took care to note its intention not to install new "hurdles" for claimants endeavoring to demonstrate a constitutional violation of the right to privacy. Instead, it simply articulated threshold elements which can be utilized by courts to screen out claims which otherwise do not implicate significant invasions of privacy rights. Once these elements are established, the court must then weigh and balance the justification for the interference against the severity of the intrusion. (*American Academy, supra*, 16 Cal.4th at pp. 330-331.)

The *Hill* decision also set the standards by which proffered justifications for alleged interferences with the right of privacy will be measured if the "threshold elements" are proved: "Some of our decisions following *White*[6] use 'compelling interest' language; others appear to rely on balancing tests giving less intense scrutiny to nonprivacy interests. The particular context, i.e., the specific kind of privacy interest involved and the nature and seriousness of the invasion and any countervailing interests, remains the critical factor in the analysis. Where the case involves an obvious invasion of an interest fundamental to personal autonomy, e.g., freedom from involuntary sterilization or the freedom to pursue consensual familial relationships, a 'compelling interest' must be present to overcome the vital privacy interest. If, in contrast, the privacy interest is less central, or in bona fide dispute, general balancing tests are employed." (*Hill, supra*, 7 Cal.4th at p. 34.)

■ Thus, these two cases clarify that in deciding whether laws or governmental actions infringe the state constitutional right of privacy, the court will first determine whether the asserted right is legally protected. If so, the court will consider if the complaining party has a reasonable expectation of privacy to engage in the activity infringed. If shown affirmatively, it must also satisfactorily appear that the nature of the intrusion is "serious" and not de minimis. Once these "threshold" findings are made in favor of the complaining party, the court will then weigh the justification offered for the invasion against the importance of the right and depth of the invasion. If the infringement impairs a fundamental right of personal autonomy, the justification for the infringement must be in furtherance of a compelling state

---

[6]The reference to *White* is to the case of *White* v. *Davis* (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222], the first decided by the Supreme Court following passage of the 1972 initiative.

interest. If not of that degree, the court will alternatively determine if the invasion is reasonably related to the purpose of the governmental action. Outfitted with these formulae necessary to the constitutional inquiry framed by this case, we turn to the task of evaluating appellant's claim.

## B.

The plurality opinion in *American Academy* clearly enunciated that the precise issue before us today was not directly involved in that case: "The issue presented by this case, of course, does not concern any claim that a minor enjoys a constitutional right to engage in sexual activity, but rather concerns whether a minor who already has become pregnant has a constitutional right to determine whether she will continue or terminate her pregnancy." (*American Academy, supra,* 16 Cal.4th at p. 335, fn. 19.)

Conversely, the question presented in this appeal does not visit issues of minors' rights to abortion, contraception, or parental permission relating to reproductive rights which were germane to the Supreme Court's analysis in *American Academy.* Nor is the issue here articulated as an unlawful restriction on procreation rights. (See *American Academy, supra,* 16 Cal.4th at pp. 327-328.) To be sure, we need not, and do not, take any position with regard to these matters in this opinion. Instead, our devoir is limited to the question of the Legislature's prerogative to enact a law making it a crime for minors closely related in age to engage in sexual intercourse with each other.

■ Respondent concedes that minors have an express state constitutional right of privacy. (*In re Roger S.* (1977) 19 Cal.3d 921, 927 [141 Cal.Rptr. 298, 569 P.2d 1286]). The primary defense to appellant's constitutional attack on section 261.5 is that the rights of adults and minors are not "coterminous." Thus, respondent argues there are freedoms adults enjoy which are beyond those afforded minors, primarily because of age and maturity. We agree.

A long line of cases since 1972 have explained that California Constitution, article I's umbrella of individual freedoms provides less protection to minors from perceived inclement governmental intrusion than it does for adults. As noted by Justice Kennard in her concurring opinion in *American Academy*: "[T]he . . . concept of legal minority, or nonage, embodies an assumption of incompetence to exercise the full panoply of rights and privileges available to adults. Our laws have established various age restrictions for voting, driving motor vehicles, purchasing alcoholic beverages, and the like. Because individuals mature at different rates, these age limits are a necessarily inexact and therefore arbitrary measure of maturity, but they

have nonetheless been accepted as constitutionally valid for most purposes. But not for all." (*American Academy, supra,* 16 Cal.4th at pp. 372-373 (conc. opn. of Kennard, J.).) The dissenting opinion added to these examples of limitations on the exercise of "adult" rights the prohibition on minors' rights to purchase tobacco products (Pen. Code, § 308, subd. (b)), the duty to attend school (Ed. Code, § 49100), the obligation to be limited by curfews not imposed on adults (see *In re Nancy C.* (1972) 28 Cal.App.3d 747 [105 Cal.Rptr. 113]), restrictions on most medical and dental treatment, and even from using a tanning facility without parental consent (Bus. & Prof. Code, § 22706, subd. (b)(3) & (4)). (*American Academy, supra,* 16 Cal.4th at pp. 395-396 (dis. opn. of Mosk, J.).) Notwithstanding parental consent, an unemancipated minor is also prohibited from undergoing voluntary sterilization (Fam. Code, § 6925, subd. (b)(1), Cal. Code Regs., tit. 22, § 70701, subd. (a)(1)); donating any part of his or her body in the event of death (Health & Saf. Code, § 7150.5); or receiving a permanent tattoo (Pen. Code, § 653). (16 Cal.4th at p. 395 (dis. opn. of Mosk, J.).)

While disagreeing with the majority's result, Justice Brown in that same opinion embellished this theme of disparate constitutional entitlements for adults and children: " '[I]t has been of profound importance in all legal inquiries involving children that minors are presumed by all phases of the law (and by the culture reflected by our law) not to have the same basic capacities as adults.' (Hafen, *Children's Liberation and the New Egalitarianism: Some Reservations About Abandoning Youth to Their "Rights"* (1976) BYU L.Rev. 605, 646-647.) The courts have generally recognized the prevailing understanding in our society that the typical child is not possessed of full capacity for individual choice. ' "[M]inors are treated differently from adults in our laws, which reflects the simple truth derived from communal experience, that juveniles as a class have not the level of maturation and responsibility that we presume in adults and consider desirable for full participation in the rights and duties of modern life." ' [Citation.] The fact there may be exceptions only serves to validate this truism." (*American Academy, supra,* 16 Cal.4th at pp. 429-430 (dis. opn. of Brown, J.).)

Appellant nevertheless argues that, whatever their differences, both minors as well as adults enjoy the same "sexual privacy right[]." Support for this proposition is sought in *Planned Parenthood Affiliates* v. *Van de Kamp* (1986) 181 Cal.App.3d 245, 276-280 [226 Cal.Rptr. 361] (*Planned Parenthood*). In that widely read decision, the court determined that a right of sexual privacy protected minors from having their consensual sexual activities involuntarily reported by health care providers under a child-abuse reporting law. In this context, the court concluded that a "mature minor, who may be under the age of 14," has the right to sexual privacy guaranteed by the state Constitution. (*Id.* at p. 278.)

But appellant errs in reading *Planned Parenthood*'s protection from dissemination of information about a minor's sexual practices to be the equivalent of recognizing a right to engage in such practices. *Planned Parenthood* focused on "privacy" as the right to be free from involuntary disclosure of intimate information about the minor, not "privacy" as a protected form of conduct. Even if appellant's broad interpretation of *Planned Parenthood* were correct, it is superseded by the recent Supreme Court opinion in *American Academy,* and runs contrary to repeated cautionary notes voiced by members of the court participating in that decision. For example, the plurality warns parenthetically: "This is not to say that the constitutional privacy clause grants to minors all of the privacy rights that are enjoyed by adults. No case has suggested, for example, that the Legislature does not have greater latitude to regulate or proscribe voluntary sexual activity by or with a minor than it does with regard to voluntary sexual activity engaged in by an adult. [Citations.]" (*American Academy, supra,* 16 Cal.4th at p. 335, fn. 19.)

In his dissent, Justice Mosk commented on the power of the Legislature to pass laws affecting minors' sexual practices: "By statute, the Legislature has in numerous areas curtailed an unemancipated minor's ability to make choices implicating privacy. Thus, before the age of 18, a minor is not 'capable of consenting to and consummating marriage' without parental consent and a court order [citation]; *nor can an unmarried minor legally consent to sexual intercourse (Pen. Code, § 261.5).*" (*American Academy, supra,* 16 Cal.4th at p. 395, italics added (dis. opn. of Mosk, J.).)

Justice Baxter, in his dissent, also distinguished between reproductive rights and the right to engage in sexual intercourse, citing, as did Justice Mosk, the very statute at issue here: "[T]he majority hold that, by adopting a constitutional right to privacy, the voters of this state intended to grant children the right to obtain abortions without the knowledge or consent of their parents or even of a judicial officer acting in the best interest of a child too immature to give consent. They do so . . . despite their recognition *that other aspects of this newly recognized right of minors to 'autonomy privacy' in reproductive matters, i.e., the sexual conduct necessary to exercise this 'right,' is also subject to parental and legislative control.* (See, e.g., Pen. Code § 261.5.)" (*American Academy, supra,* 16 Cal.4th at p. 415, italics added (dis. opn. of Baxter, J.).)

In *People v. Scott* (1994) 9 Cal.4th 331 [36 Cal.Rptr.2d 627, 885 P.2d 1040], our Supreme Court recognized the state interests unique to minors that are implicated in legislation regulating minors' sexual activities, including section 261.5: "Above and beyond the protection afforded to all victims

of sexual assault, the Legislature has determined that children are uniquely susceptible to 'outrage' and exploitation. Hence, special laws on the subject of sex with children have been enacted. They expand the kinds of acts which may be deemed criminal sexual misconduct, and they generally operate without regard to force, fear, or consent. (See, e.g., . . . § 261.5 [sexual intercourse with nonspouse under 18], . . .)" (9 Cal.4th at pp. 341-342.)

In light of these Supreme Court pronouncements recognizing a more limited right of privacy for minors than for adults, we find appellant's reference to the Florida Supreme Court's decision in *B.B.* v. *State* (Fla. 1995) 659 So.2d 256 to be of dubious value, and certainly unworthy of the persuasive force bestowed on it by appellant. The case holds that Florida's statute making it a second degree felony for minors "of previous chaste character" to engage in consensual sexual intercourse violates Florida's constitutional right of privacy.[7] However, the opinion rests on the premise that Florida's statutory rape statute was enacted " 'to protect minors from sex acts imposed by adults.' " (659 So.2d at p. 260, citing *Victor* v. *State* (Fla.Dist.Ct.App. 1990) 566 So.2d 354, 356. The court concluded that the statute was being used as a "weapon" to adjudicate a minor delinquent rather than as a "shield" to protect a minor. (659 So.2d at p. 260.) For this reason, and because the statute did not represent the least intrusive means of furthering the Legislature's purpose, the court held the statute unconstitutional as applied to the minor on the grounds that it was violative of the right to privacy. (*Ibid.*)

Section 261.5 contains separate subdivisions differentiating between statutory rape involving minors only (subd. (b)), and statutory rape where the perpetrator is an adult (subd. (d)). As we have noted, the purpose of California's statute was to make illegal *both* forms of conduct. Thus, the Florida statute is materially at variance with section 261.5, making the Florida Supreme Court's analysis inapposite.

Furthermore, the Florida court was deeply divided on the precise issue we must decide—whether states can enact laws restricting the sexual activities of minors. The majority opinion is actually a three-judge plurality opinion. A separate concurring opinion of two justices agreed the statute was unconstitutional, but not because minors enjoyed a right of privacy to engage in sexual intercourse. The concurring opinion focused on the regrettable use of the term "unchaste" to describe those within the protected class, and found

---

[7]Article I, section 23 of the Florida Constitution provides: "Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law."

the implications of the statute embodying such a limitation "appalling." (*B.B.* v. *State*, *supra*, 659 So.2d at p. 260.) Three justices dissented in two separate opinions. The "majority dissent" criticized the plurality's opinion on the basis that it focused on only one goal of the statutory rape statute, and ignored all other "wide-ranging risks associated with premature sexual activity." (*Id.* at p. 262 (dis opn. of Grimes, C. J.)). Last, the lone dissenter concluded the plurality exceeded the question certified to the Florida Supreme Court by the intermediate appellate court, but otherwise essentially agreed with the analysis of the "majority dissent."

Therefore, appellant is incorrect in embossing his argument that minors possess a privacy right of constitutional dimension to engage in sexual intercourse with the imprimatur of the Florida high court. Only three members of a seven-member court have embraced this position, while four members have expressly or implicitly agreed with the position we take on the matter today.

Although minors have privacy rights under article I, section 1, of the California Constitution, they do not have a constitutionally protected interest in engaging in sexual intercourse. While we do not ignore the reality that many California teenagers are sexually active, that fact alone does not establish that minors have a right of privacy to engage in sexual intercourse. We accept the premise that due to age and immaturity, minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences. While they may have the ability to respond to nature's call to exercise the gift of physical love, juveniles may yet be unable to accept the attendant obligations and responsibilities. For all of these reasons we conclude there is no privacy right among minors to engage in consensual sexual intercourse.

## C.

Assuming arguendo that minors have privacy rights equal to those of adults to engage in consensual sexual activity, the next "threshold element" which must be present is whether minors have a legitimate expectation of privacy in such activity for which the state would have to justify an intrusion. We find no expectation of privacy exists.

The four-part test for determining this question was summarized by Justice Kennard in *American Academy*: "Regardless of age restrictions, therefore, an adolescent's expectation of privacy is reasonable as to decisions with the following characteristics: (1) they are protected by the right of privacy for adults, (2) they are within the adolescent's competence, (3) they

have serious and enduring consequences, and (4) they cannot be postponed to the age of legal majority. (See Keiter, *Privacy, Children, and Their Parents: Reflections on and Beyond the Supreme Court's Approach* [(1982)] 66 Minn. L.Rev. 459, 503, 517.)" (*American Academy*, *supra*, 16 Cal.4th at p. 373 (conc. opn. of Kennard, J.).)

Factor 1 is present, as a privacy right indisputably attaches to consensual sexual activity between adults. With regard to factor 2, we have already expressed our view concerning the incompetence of minors to realistically accept the responsibilities of sexual emancipation. Therefore, factor 2 of the test is absent—reason enough to determine there is no reasonable expectation of privacy. Furthermore, factors 3 and 4 are not met.

There is no suggestion in the record that postponement of consensual sexual intercourse until adulthood carries with it serious or enduring consequences. Indeed, other personal liberties adults enjoy are denied to minors without engendering concern that their future lives will be impaired because of the temporary deprivation. These age-restricted activities include the consumption of alcoholic beverages, gambling, and the mobility afforded through operation of motor vehicles. This last point was of particular relevance to the Supreme Court in *American Academy* when it noted the time urgency associated with the exercise of reproductive rights by minors. "The abortion decision is different [from other postponed decisions] because . . . a pregnancy decision fundamentally affects the subsequent course of a woman's life, but also because, unlike a decision concerning marriage or sterilization . . . the abortion decision is highly time sensitive. Although marriage and sterilization can be postponed to adulthood, the option of abortion 'effectively expires in a matter of weeks from the onset of pregnancy.' [Citation.] '[T]he abortion decision is one that simply cannot be postponed, or it will be made by default with far-reaching consequences.' [Citation.]" (*American Academy*, *supra*, 16 Cal.4th at p. 373 (conc. opn. of Kennard, J.).)

After considering the factors deemed important in *American Academy*, we conclude the reasonable expectation of privacy that was found to exist for minors to obtain an abortion cannot be imputed to their decision to engage in consensual sexual intercourse. Considering all the circumstances, we hold that a minor does not have a legitimate expectation of privacy to engage in consensual sexual activity with another minor.[8]

---

[8]The third threshold element, whether the intrusion is de minimis or serious, need not be decided. However, since the statute criminalizes *any* act of sexual intercourse between minors, it *could hardly* be argued that the statute does not pass the minimum intrusion

## D.

Alternatively, appellant contends that even if section 261.5 is facially constitutional, it does not pass constitutional muster when applied to him. He argues that because the statute is intended to protect minors as a class from consensual sexual intercourse, he is a "victim" as defined by the statute, and for that reason alone he may not be prosecuted as a "perpetrator."

In support of this novel proposition, appellant relies on *In re Meagan R.*, *supra*, 42 Cal.App.4th 17. In that case 14-year-old Meagan R. was prosecuted pursuant to a petition filed under Welfare and Institutions Code section 602 for burglary after she and her 22-year-old boyfriend entered the victim's apartment without permission, had consensual sexual intercourse there, and left after vandalizing the premises. The crime of burglary involves "the act of unlawful entry accompanied by the specific intent to commit grand or petit larceny or any felony." (42 Cal.App.4th at p. 22.) The petition designated theft as the predicate crime supporting the burglary charge. Because no theft was proved, the juvenile court instead found Meagan aided and abetted her own felony statutory rape thereby committing a different predicate crime than that charged. (*Id.* at p. 21.)[9] The Court of Appeal reversed this finding, concluding Meagan could not be prosecuted for statutory rape because she was a victim and within the class of persons protected by the statute: "Under section 261.5 and the surrounding circumstances here, Meagan was the protected victim under section 261.5, a provision designed to criminalize the exploitation of children rather than to penalize the children themselves. . . ." (*Id.* at p. 25, fn. omitted.) In reversing the burglary finding, the court reasoned, "[G]iven that Meagan under the circumstances of this case was the victim of statutory rape under section 261.5, the juvenile court cannot rely on that crime to serve as the predicate *felony* in a true finding she committed burglary. When she entered [the victim's] residence, she had no punishable intent, for she did not have the culpable state of mind required for burglary. Because she could not intend to aid and abet her own statutory rape, she did not enter the residence with the intent to commit *that felony* therein. While Meagan may have entered the residence with the intent to have sex, she could not commit a *felony* if she completed that act." (*Id.* at pp. 25-26, italics added.)

element. In light of our conclusion that minors have no protected constitutional right to the free exercise of sexual intercourse, we also do not examine the interests of the state which may be furthered by the challenged statute, nor need we engage in any weighing process.

[9]Alternative arguments that Meagan's due process rights were violated because the burglary relied on an uncharged felony as its predicate crime were not reached by the Court of Appeal. (42 Cal.App.4th at p. 20, fn. 2.)

We have italicized the word "felony" quoted from the decision to emphasize that Meagan was found to have aided and abetted the felonious statutory rape subdivision of section 261.5, and not the misdemeanor subdivision involved in the instant case. The felony portion of section 261.5 is found in subdivision (d), which reads: "Any person over the age of 21 years who engages in an act of unlawful sexual intercourse with a minor who is under 16 years of age is guilty of either a misdemeanor or a felony, . . ."[10]

Unlike the misdemeanor variant of statutory rape, which prohibits two minors from engaging in sexual intercourse (§ 261.5, subd. (b)), Meagan could not have been both a perpetrator and a victim under subdivision (d) because it required that the perpetrator be over the age of 21 years. Thus, as a matter of law Meagan could not be a perpetrator of felony statutory rape, only a victim, and she therefore could not form the requisite intent to aid and abet her own felony statutory rape. (42 Cal.App.4th at p. 26.)

Appellant contends that although ". . . *Meagan R.* did not determine the applicability of section 261.5 to conduct between two minors [citation], the 'protected class' rationale of that decision should bar [appellant's] conviction as well." We disagree. We have already pointed out that in dicta in *American Academy*, at least three justices recognized implicitly the Legislature's power to enact section 261.5, subdivision (b), thereby criminalizing consensual sexual intercourse between minors. For there to be a violation of that statute, one minor must be denominated a perpetrator and the other a victim. The fact that a minor may be a victim does not ipso facto exclude a minor from being charged as a perpetrator. This was not so in Meagan's case. Under no circumstance could she be charged as a perpetrator because she was not 21 years old.

Respondent cites to cases involving charges against minors under analogous statutes as being illustrative of this point. For example, in *In re Gladys R.* (1970) 1 Cal.3d 855 [83 Cal.Rptr. 671, 464 P.2d 127], a minor was found to have violated former section 647a, which allowed for conviction as a vagrant " '[e]very person who annoys or molests any child under the age of 18 . . . .' " (*Id.* at p. 867, italics omitted.) The Supreme Court rejected the minor's argument that, as a matter of law, a minor could not be declared a ward of the juvenile court based on a violation of this statute. Noting that the statute applied to "every person" the court reasoned, "Clearly, the words '[e]very person' include a minor as well as an adult." (*Ibid.*)

Similarly, in *In re James P.* (1981) 115 Cal.App.3d 681 [171 Cal.Rptr. 466], the court affirmed a finding that the minor could be a perpetrator under

---

[10]Thus, this subdivision is a "wobbler," vesting discretion in the prosecutor to charge the crime as a misdemeanor or felony.

a misdemeanor statute which prohibited "[e]very person" from contributing to the delinquency of a minor. (*Id.* at p. 685.) Relying on *Gladys R.*, the court found the term "[e]very person" to be "specific, free from ambiguity, and therefore not subject to any construction other than a literal one." (115 Cal.App.3d at p. 685.) The court held that in light of the language of the statute, ". . . it would be incongruous to claim, as [James P.] does, that the statute applies solely to adult violators." (*Ibid.*)

More recently, in *In re Paul C.* (1990) 221 Cal.App.3d 43 [270 Cal.Rptr. 369], the Third District Court of Appeal, following several prior decisions, rejected an argument similar to that made by appellant here in the context of section 288.[11] Because the statute protected persons under the age of 14 from lewd and lascivious conduct, the minor there argued he could not have violated section 288 because he also was 14 years old. The court rejected this and other arguments, concluding that the statutory reference to "[a]ny person" included a person under 14 years of age, such as the minor, upon proof of the minor's knowledge of the wrongfulness of his acts along with evidence of criminal intent. (221 Cal.App.3d at pp. 50-51; see also *In re Jerry M.* (1997) 59 Cal.App.4th 289, 296 [69 Cal.Rptr.2d 148].)

Section 261.5, subdivision (b), which applies to "[a]ny person," is similar in material respects to the statutes analyzed in *Gladys R.*, *James P.* and *Paul C.* Consequently, we find the consistent logic of these authorities to be both unassailable and irresistible when applied to the statute in question. The question of when, who, and under what circumstances a minor should be charged with a violation of section 261.5 must reside within the sound exercise of prosecutorial discretion. We see no constitutional infirmity in the charge brought against appellant for having violated section 261.5, or in the court's order making appellant a ward of the court pursuant to Welfare and Institutions Code section 602.

---

[11]Section 288 states in relevant part as follows:

"(a) Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

"(b)(1) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

## IV.

For the reasons stated in this opinion, the finding on the petition is affirmed.

Kline, P. J., and Haerle, J., concurred.