758 A.2d 301 (2000)
In re G.T., Juvenile.
No. 96-610.
Supreme Court of Vermont.
May 19, 2000.
*302 Robert M. Fisher, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.
Robert Appel, Defender General, and William A. Nelson, Appellate Attorney, Montpelier, for Defendant-Appellant.
PRESENT: DOOLEY, MORSE, JOHNSON and SKOGLUND, JJ., and GIBSON, J. (Ret.), Specially Assigned.
DOOLEY, J.
G.T. appeals from a family court order adjudicating him to be a delinquent child because he is guilty of statutory rape, that is, he engaged in a sexual act with a person under the age of sixteen years, in violation of 13 V.S.A. § 3252(a)(3). At the time of the alleged offense, G.T. was fourteen years of age. He contends that, as a person within the protection of the statutory rape statute, he cannot be charged with violating the statute. We agree and reverse.
The trial court's findings are not contested on appeal. G.T. lived across the street from M.N., a twelve-year-old girl. The two had been friends, but had never had sexual contact with each other prior to the incident in question. One night in October 1995, while G.T. and M.N. were watching a television movie in M.N.'s house, G.T. began kissing M.N. on the mouth. G.T. then pulled M.N.'s legs out straight, pulled her shorts down, pulled his pants down, and got on top of her. He continued kissing her with his hands on her shoulders. M.N., who had never previously had intercourse, felt what she believed was G.T.'s penis in her vagina. G.T. asked if it hurt, but did not stop when M.N. said it hurt. Although she was not afraid of him, M.N. was not sure what G.T. would have done if she had pushed him off of her.
G.T.'s actions were interrupted when M.N.'s mother and boyfriend unexpectedly returned to the house. They saw G.T. scramble up off M.N., but did not observe sexual contact. They ordered G.T. out of the house. M.N. began crying and ran upstairs. She revealed to her mother what had occurred.
On these facts, the State alleged that G.T. had committed statutory rape and, therefore, had engaged in a delinquent act. Based upon the above facts, the family court adjudicated G.T. a delinquent child, and this appeal followed.
Some context is necessary to frame the issue before us. A "delinquent child" is a child between the ages of ten and sixteen who has committed a delinquent act. See 33 V.S.A. § 5502(a)(1), (4). A "delinquent act" is defined, in relevant part, as "an act designated a crime under the laws of this state." Id. § 5502(a)(3). The question we must address is whether the family court properly found that G.T. committed a crime, specifically the crime of statutory rape.
The crime of statutory rape is defined in 13 V.S.A. § 3252(a)(3) as follows:
(a) A person who engages in a sexual act with another person and
. . . .
(3) The other person is under the age of 16, except where the persons are married to each other and the sexual act is consensual;
. . . .
shall be imprisoned for not more than 20 years, or fined not more than $10,000.00, or both.
G.T. argues that the juxtaposition of the word "person" in the two parts of the statute shows that the Legislature intended that the perpetrator be a person of sixteen years of age or older. Although G.T. recognizes that the plain meaning of the term might not contain that limitation, he argues that the context does require such a limitation.
G.T. also stresses that we have held that statutory rape is a strict liability offense, see State v. Searles, 159 Vt. 525, 528-29, 621 A.2d 1281, 1283 (1993), for which the *303 only elements are the age of the "victim" and the presence of a sexual act. See State v. Barlow, 160 Vt. 527, 530, 630 A.2d 1299, 1301 (1993). Thus, under the State's theory, both G.T. and M.N. have necessarily committed the crime, and all consensual sexual activity between teenagers is a felony for both participants. Given the prevalence of such activity, see Vermont Dep't of Health, Vermont Youth Risk Behavior Survey 53-54 (1997) (among students in the eleventh grade, the year in which they generally turn sixteen, fifty-six percent of males and fifty percent of females report having had sexual intercourse)[1] and the potential sentence of twenty years in jail,[2] G.T. argues that such a construction creates absurd, irrational or unjust results.
As G.T. emphasizes, we faced a similar statutory construction determination in In re P.M., 156 Vt. 303, 592 A.2d 862 (1991), a delinquency proceeding in which the male juvenile, who was almost fifteen years old, engaged in inappropriate sexual activity with a young girl who was almost nine years old. In P.M., the juvenile was charged with lewd and lascivious conduct with a child under sixteen years of age, in violation of 13 V.S.A. § 2602, and argued that the perpetrator could not also be a child under sixteen years if the sexual activity was consensual. As in this case, the statute was silent on the age of the perpetrator. Similar to this case, the juvenile argued that it was absurd to believe that the Legislature intended to make teenage petting a felony.
Although we rejected the juvenile's argument in P.M., we found that "age differential is an important factor" in determining whether the juvenile engaged in a delinquent act because "common-sense community standards" must control what is lewd and lascivious conduct. See id. at 308, 592 A.2d at 864. We concluded:
Under the facts of this case, considering the age disparity of the participants, § 2602 is sufficiently certain to inform a person of reasonable intelligence that the conduct engaged in by P.M. is proscribed.
Id.
G.T. argues that if we took a similar approach here we would reject prosecution under § 3252(a)(3) because the age differential is much narrower than in P.M., and the State can charge G.T. under § 3252(a)(1), which criminalizes nonconsensual or coerced, compelled participation in a sexual act.
Although P.M. is helpful, we do not find it controlling. In P.M., the issue was whether the conduct of the juvenile met the broad and general standard of "lewd and lascivious conduct," and this Court defined what factors were relevant to that determination. Here the standard, if it applies, is narrow and specific. See In re John C., 20 Conn.App. 694, 569 A.2d 1154, 1156 (1990) (criminal statute on impairing the morals of children covered "any person" and, therefore, a minor defendant); In re J.D.G., 498 S.W.2d 786, 789 (Mo. 1973) (rape statute covering "every person" who has intercourse with a female child under the age of sixteen years applies to boy under sixteen). Nevertheless, we concluded that the statute involved in that case, § 2602, "concerns situations where a child is sexually exploited by another person." We believe that § 3252(a)(3) also concerns those situations.
*304 Although P.M. is not controlling, we find three other reasons to follow its approach and question the apparent plain meaning of § 3252(a)(3) in this context. The first is that the Legislature has taken other actions which appear inconsistent with the plain meaning of § 3252(a)(3). Similar inconsistencies form the basis for the decision in Planned Parenthood Affiliates v. Van de Kamp, 181 Cal.App.3d 245, 226 Cal.Rptr. 361 (1986), a case discussed at length in P.M.
In Van de Kamp, reproductive health care providers sued the California attorney general to overturn his ruling requiring health care providers to report to law enforcement, under the California child abuse reporting law, the names of children under fourteen years of age who they believed had engaged in voluntary, consensual sexual activity with another minor of similar age. The attorney general had ruled that such reporting was required because California law included within the crime of sexual abuse lewd and lascivious conduct upon or with the body of a minor under fourteen years of age and did not require that the perpetrator be fourteen years of age or older. In essence, the attorney general had ruled that every sexually active child under fourteen years of age was a child abuse victim, perpetrator or both, and every medical care provider who learned of this activity in the course of extending medical care was required to report it to law enforcement authorities for investigation of prosecution. The failure of a medical care provider to report, when required by the law, is a crime in California.
The court in Van de Kamp agreed with the providers' contention that minors would not seek reproduction-related health care if no confidentiality requirements applied and their circumstances were automatically reported for a criminal investigation. Accordingly, it held that the legislature could not have intended that the providers report as child abuse all voluntary sexual activity of minors under fourteen years. It reached that conclusion in part by holding that the underlying criminal statute does not apply to sexual activity between partners who are both under the age of fourteen. See id. at 376-77. Contrary to the characterization in the dissent, this holding is not dicta.
Although the context of this decision is different, the exact conflict that underlies the Van de Kamp decision is present in Vermont. A "child who is sexually abused. . . by any person" is an "abused or neglected child." 33 V.S.A. § 4912(2). Rape of a child is sexual abuse. See id. § 4912(8).[3] If any health care provider; school teacher, librarian, principal, or guidance counselor; mental health professional; day care worker; social worker; police or probation officer; or camp owner, administrator or counselor, among others, has reason to believe a child has been abused, that person must report that fact to the Department of Social and Rehabilitation Services (SRS) within twenty-four hours. See id. § 4913(a). Failure to make such a report is a misdemeanor, subject to a fine of not more than $500. See id. § 4913(e).
The commissioner of SRS is required to commence an investigation within 72 hours of receiving the report. See id. § 4915(a). Normally the investigation must include a visit to the child's place of residence and an interview with the child, see id. § 4915(b)(1), (2), and determine the "identity of the person responsible for such abuse or neglect." Id. § 4915(b)(4). If the abuse is substantiated, the commissioner *305 or a designee "shall promptly inform a parent or guardian of the child." Id. § 4916(e)(1). The written records of the SRS investigation are placed in a registry of substantiated child abuse cases indexed by the name of the child, during the child's minority, and by the name of the perpetrator. See id. § 4916(a), (g). Registry information may be provided to persons designated by the commissioner, see id. § 4916(d), and is available to day care providers for background checks on job applicants and staff. See In re Selivonik, 164 Vt. 383, 385 n. 2, 670 A.2d 831, 833 n. 2 (1995). Thus, placement of information in the registry represents a substantial stigma for the perpetrator, see id. at 387, 670 A.2d at 834, and a substantial stigma for the perpetrator, see id. at 387, 670 A.2d at 834, and a substantial privacy invasion for the abused child.
Under the State's theory in this case, if two persons under sixteen years of age commit consensual, mutual sexual acts with each other, they are both guilty of statutory rape. Thus, under the child abuse reporting laws, any of the listed professionals who learn of the acts must report them to SRS or risk prosecution. SRS must notify each child's parents and list both children in the child abuse registry as victims and perpetrators. In Selivonik, we noted the irony of maintaining confidential the fact and detail of a juvenile delinquency adjudication, while placing and disseminating information about the same juvenile in the child abuse registry. See id. Here the tension goes beyond irony. We seriously doubt the that Legislature intended to label a juvenile under sixteen years of age who engages in a sexual act a child abuser for life.
There is another strong indication that the Legislature did not intend this result. The State of Vermont, with approval of the Legislature, has accepted funds under the Family Planning Services and Population Research Act of 1970, P.L. 91-572, 84 Stat. 1504 (Dec. 24, 1970) (codified as 42 U.S.C. §§ 300 to 300a-5, 3505a, 3505b). Among the Act's stated objectives are "to assist in making comprehensive voluntary family planning services readily available to all persons desiring such services" and "to develop and make readily available information. . . on family planning . . . to all persons desiring such information." Id. § 2(1) and (5) (emphasis added). The program, also known as Title X of the Public Health Service Act, has served teenagers since its inception. See Planned Parenthood Federation of America, Inc. v. Heckler, 712 F.2d 650, 652 (D.C.Cir.1983). Indeed, since enacting Title X, Congress has "frequently expressed its increasing concern about the still unmet family planning needs of sexually active teenagers," amending the statute in 1978 to require that Title X projects offer "`a broad range of acceptable and effective family planning methods and services (including . . . services for adolescents).'" Id. (quoting 42 U.S.C. § 300(a) and citing congressional committee reports from 1974 and 1975).
Notwithstanding statutory language encouraging family involvement in the provision of family planning services to teenagers, the federal courts have invalidated regulations requiring Title X grantees to notify parents or guardians before providing contraceptives to unemancipated minors. See id. at 660-61; New York v. Heckler, 719 F.2d 1191, 1196 (2d Cir.1983). The D.C. Circuit put particular emphasis on Congress's finding that "confidentiality [is] essential to attract adolescents to the Title X clinics," without which the availability of family planning services to teenagers would be "severely undermined." Planned Parenthood, 712 F.2d at 660. Under current federal regulations, a recipient of Title X funds may not require, whether pursuant to state law or otherwise, that parents give consent, or even be notified of, the services being provided. See County of St. Charles v. Missouri Family Health Council, 107 F.3d 682, 685 (8th Cir.), cert. denied, 522 U.S. 859, 118 S.Ct. 160, 139 L.Ed.2d 105 (1997); Does v. Utah Dep't of Health, 776 F.2d 253, 255-56 (10th Cir.1985); Parents United for Better Schools, Inc. v. School Dist. of Philadelphia *306 Bd. of Educ., 978 F.Supp. 197, 208-09 (E.D.Pa.1997).
At best, the State's interpretation means that family planning providers are put in the position where they must abet the commission of a felony and may not disclose their assistance. At worst, they are placed between directly conflicting legal requirements: to disclose child abuse that they reasonably believe is occurring, and to comply with federal confidentiality requirements. We must question a statutory construction that would create such a conflict.
The second reason is that the State's construction of 13 V.S.A. § 3252(a)(3) involves a breadth of prosecutorial discretion that raises serious concerns about whether the resulting prosecutions are consistent with equal protection of the law. In this case, the prosecutor was candid that he believed G.T. had violated § 3252(a)(1), which provides:
(a) A person who engages in a sexual act with another person and
(1) Compels the other person to participate in a sexual act:
(A) Without the consent of the other person; or
(B) By threatening or coercing the other person
commits a felony. He chose to charge the case under § 3252(a)(3) because it creates a strict liability offense which is easy to prove. Because sexual conduct is private, prosecution necessarily arises from complaints. The prosecutor added at argument that the Windham County State's Attorney's office receives numerous complaints to prosecute teenagers under § 3252(a)(3), usually from parents, but does so only when there is evidence of coercion or a lack of true consent. Thus, the prosecutor's office brings delinquency proceedings only when it believes the juvenile has acted without the consent of the other juvenile in violation of § 3252(a)(1)(A) or by coercing the other juvenile in violation of § 3252(a)(1)(B), but it never charges the juvenile committed either crime. Instead, it charges that the juvenile committed a violation of § 3252(a)(3) so that it does not have to prove the presence of the exact elements it found to justify the prosecution. Thus, the prosecutor determines what crime the juvenile has committed, but charges in such a way as to ensure that the juvenile never has the opportunity to show that he or she did not commit the crime found by the prosecutor.
Although we have only a limited record here, we note that the selective enforcement of the underlying statute has the hallmarks that other courts have relied upon to find discriminatory prosecution. See, e.g., People v. Acme Markets, Inc., 37 N.Y.2d 326, 372 N.Y.S.2d 590, 334 N.E.2d 555, 558 (1975) (discriminatory enforcement found where Sunday sales law was unenforced, save upon complaint); State v. Vadnais, 295 Minn. 17, 202 N.W.2d 657, 659-60 (1972) (exclusion of class of violators intended to be included was discriminatory enforcement). We are not, however, suggesting that we should impose limits on prosecutorial discretion; we are questioning instead a statutory interpretation that necessarily results in this kind of enforcement administration. It is one thing to give discretion in enforcing a legislatively defined crime; it is quite another to give to prosecutors the power to define the crime. See In re P.M., 156 Vt. at 315, 592 A.2d at 868 (Dooley, J., dissenting). As Professor Sanford H. Kadish observed in his seminal work on police discretion:
One kind of systematic nonenforcement by the police is produced by criminal statutes which seem deliberately to over-criminalize, in the sense of encompassing conduct not the target of legislative concern, in order to assure that suitable suspects will be prevented from escaping through legal loopholes as the result of the inability of the prosecution to prove acts which bring the defendants within the scope of the prohibited conduct. *307 A prime example are laws prohibiting gambling. . . .
Insofar as such laws purport to bring within the condemnation of the criminal statute kinds of activities whose moral neutrality, if not innocence, is widely recognized, they raise basic issues of a morally acceptable criminal code. Moreover, these laws are in effect equivalent to enactments of a broad legislative policy against, for example, undesirable gambling, leaving it to the police to further that policy by such arrests as seem to them compatible with it. From one point of view such statutes invite a danger cognate to that of defining a crime by analogy, augmented by the fact that it is the policeman who is defining criminal conduct rather than a court. That no actual abuse has been demonstrated in police administration of an overdrawn statute, such as gambling, would not seem to answer the moral and precedential objections to this tactic, any more than the fact that courts in states where the doctrine of common law crimes exists have not in recent years abused it would answer the objections to this doctrine.
S. Kadish, Legal Norm and Discretion in the Police and Sentencing Processes, 75 Harv. L.Rev. 904, 909-11 (1962). The preferable response to this kind of discretion is to reduce it by narrowing the ambit of the statute. See N. Abrams, Internal Policy: Guiding the Exercise of Prosecutorial Discretion, 19 U.C.L.A. L.Rev. 1, 12 (1971).
The third reason to question the plain meaning of § 3252(a)(3) is that prosecution for consensual sexual acts between juveniles raises important privacy concerns that implicate constitutional rights. The United States Supreme Court has held that "the right to privacy in connection with decisions affecting procreation extends to minors as well as to adults," Carey v. Population Servs. Int'l, 431 U.S. 678, 693, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), in striking down a New York statute which prohibited distribution of contraceptive devices to minors. Although the Court explicitly did not decide whether minors have a constitutional right to engage in consensual sexual behavior, see id. at 694 n. 17, 97 S.Ct. 2010, an outright prohibition on sexual activity appears inconsistent with the rationale for the decision. See In re Prima County Juvenile Appeal, 164 Ariz. 25, 790 P.2d 723, 733-34 (1990) (en banc) (Feldman, J., dissenting).
We have not had occasion to determine the extent to which privacy is protected generally under the Vermont Constitution, see State v. Barlow, 160 Vt. at 528, 630 A.2d at 1300, although other states have found such protection even in the absence of a specific privacy provision. See, e.g., Powell v. State, 270 Ga. 327, 510 S.E.2d 18, 22 (1998). In Barlow, a statutory rape case involving an adult defendant, we did not decide whether minors have a right to privacy in sexual matters under the Vermont Constitution because we concluded that the state had a compelling interest in protecting minors that was served by the statute at issue. 160 Vt. at 528, 630 A.2d at 1300. We noted concerns about the dangers of pregnancy, venereal disease, damage to reproductive organs, the lack of considered consent, heightened vulnerability to physical and psychological harm, and the lack of mature judgment among the many significant interests of the state. See id. (citing State v. Munz, 355 N.W.2d 576, 585 (Iowa 1984)). We also stressed our concern for protecting the well-being of minors from exploitation. See id. at 529, 630 A.2d at 1300 (quoting State v. Searles, 159 Vt. at 528, 621 A.2d at 1283.)
Although we again do not decide whether sexual privacy is protected by the Vermont Constitution, we do not believe that Barlow is necessarily inconsistent with such protection for consensual sexual activity between minors. In a case relied upon in Barlow, the Florida Supreme Court found that a minor's right to privacy did not protect an adult from statutory rape prosecution, even though the minor *308 consented to the sexual activity. See Jones v. State, 640 So.2d 1084, 1087 (Fla. 1994). When the court confronted a similar question in a case where the sexual activities were between juveniles under the age of consent, the court found that the State failed to demonstrate the compelling state interest to justify this application of the statutory rape statute, noting that the statute was "not being utilized as a shield to protect a minor, but rather . . . as a weapon to adjudicate a minor delinquent." B.B. v. State, 659 So.2d 256, 260 (Fla.1995). But see J.A.S. v. State, 705 So.2d 1381, 1385 (Fla.1998) (statutory rape charge of fifteen-year-old boy for having consensual sex with twelve-year-old girl did not violate boy's privacy rights).[4]
We have avoided construction of a statute that threatens its constitutionality. See, e.g., Central Vermont Ry. v. Department of Taxes, 144 Vt. 601, 604, 480 A.2d 419, 421 (1984); see also Jones v. United States, 526 U.S. 227, 239, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (courts should avoid construing statutes in a manner to create serious constitutional problems, whenever possible). However we ultimately decide whether the sexual privacy of juveniles is protected under the Vermont Constitution, we must take into account the constitutional question in construing 13 V.S.A. § 3252(a)(3) in the case before us.
We return to the statutory construction question before us. We have expressed the plain meaning rule as a presumption, Brennan v. Town of Colchester, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999), recognizing that in some circumstances the literal meaning of the words employed cannot prevail. We are faced with the unique confluence of three factors that weigh heavily against the plain meaning rule: (1) statutes that deal with the same subject matter should be construed together to harmonize them, see, e.g., In re 1650 Cases of Seized Liquor, 168 Vt. 314, 321, 721 A.2d 100, 105 (1998) (we "consider the purpose of the statute and look to the broad subject matter of the law, its effects, consequences and reason and spirit of the law"); Central Vermont Hosp., Inc. v. Town of Berlin, 164 Vt. 456, 459, 672 A.2d 474, 476 (1995); (2) statutes should be construed so as not to reach absurd results manifestly unintended by the Legislature, see Roddy v. Roddy, 168 Vt. 343, 347, 721 A.2d 124, 128 (1998); and (3) statutes should be construed to avoid constitutional difficulties, if possible, see supra. In exceptional circumstances, we must narrow the reach of a broadly-worded statute to make it consistent with other statutes or to avoid serious questions of constitutionality. State v. Read, 165 Vt. 141, 148-49, 680 A.2d 944, 948-49 (1996); In re P.M., 156 Vt. at 307-08, 592 A.2d at 864. We believe this is such a case.
Our analysis parallels that of the Maryland Court of Appeals in Schochet v. State, 320 Md. 714, 580 A.2d 176, 183 (1990), which found that a broadly worded statute criminalizing fellatio did not apply to consensual, noncommercial, heterosexual activity between adults in the privacy of the home. The court noted that the "very broad and sweeping nature" of the language, with no specifics, renders the statute "reasonably susceptible to different constructions" and susceptible to constitutional challenge, and narrowed it to avoid the constitutional question. See id.; see also People v. Lino, 447 Mich. 567, 527 N.W.2d 434, 441 (1994) (Levin, J., concurring) (accepting similar construction of Michigan statute).
*309 In order to make § 3252(a)(3) consistent with the child abuse reporting statute and the legislatively-approved family planning services for minors, and to avoid the real possibility of discriminatory enforcement and interference with the privacy rights of defendant and the asserted victim, we construe subsection (a)(3) as inapplicable in cases where the alleged perpetrator is also a victim under the age of consent. We agree with the Florida Supreme Court that the statute is intended as a shield for minors and not a sword against them.
We emphasize that we reach this result as a fair construction of the relevant legislation as it is currently worded. The Legislature has the power to specifically address the issue before us by amendment to the statute. If it decides that juveniles are both perpetrators and victims of statutory rape when they engage in consensual intercourse, it can clarify the apparently inconsistent child abuse reporting and family planning laws.
Meanwhile, unlike the dissent, we doubt that our decision will have any effect on other cases because, as discussed above, the prosecutor has made clear that he will bring cases like this only where he believes there has been nonconsensual or coerced sexual acts between persons under the age of sixteen, conduct that is a crime under 13 V.S.A. § 3252(a)(1). We also doubt that we impose upon prosecutors by forcing them to prove the crime they believe occurred, rather than allowing them to rely on the relaxed burden of proof under § 3252(a)(3).[5] This decision, however, will bring needed clarity to the obligation to report child sexual activity as child abuse under the child abuse reporting statutes.[6]
Reversed.
JOHNSON, J., dissenting.
Today, the majority holds that a person under sixteen years of age cannot be adjudicated a delinquent for having committed statutory rape. Before examining this broad holding, I want to emphasize what this case is about, and what it is not about. First, this is an appeal from an adjudication of delinquency. The appeal does not concern subjecting juveniles to criminal prosecution for statutory rape. Indeed, as I explain later in detail, under Vermont law juveniles less than sixteen years of age cannot be criminally prosecuted for statutory rape, and thus, notwithstanding the majority's suggestion to the contrary, see ___ Vt. at ___, 758 A.2d at 302-03, they cannot be imprisoned for up to twenty years for violating 13 V.S.A. § 3252(a)(3).
Second, the facts of this case do not lend support to the majority's concern that juveniles will be punished for consensual sex. As found by the trial court, the facts demonstrate that the fourteen-year-old boy surprised the twelve-year-old girl by suddenly engaging in sex with her even though they had never had any sexual contact prior to that time. Further, he continued his conduct even after the girl told him that it hurt. The prosecutor may have had difficulty proving forcible rape, but, apart from presenting the legal argument that juveniles can never be adjudicated delinquent for having committed statutory rape, no one is claiming that the initiation of delinquency proceedings was inappropriate under the facts of this case.
*310 Third, this case is not about child-abuse reporting laws. None of the parties contend that construing § 3252(a)(3) according to its plain meaning would be inconsistent with those laws or would violate any claimed right of juveniles to engage in sexual intercourse unfettered by governmental interference. Nevertheless, the majority disregards the Legislature's intent and follows its own policy based on these speculative and undocumented concerns. I do not believe that we should decide cases based on potential conflicts, particularly when the resulting holding defies legislative intent. Rather, we should construe § 3252(a)(3) according to its plain meaning and clear legislative intent, and allow the political or legal processes to change the law if and when the potential problems posed by the majority actually arise. Accordingly, I dissent.

I.
Understandably, given its holding, the majority does not dwell on the plain meaning or legislative intent of § 3252(a)(3). Therefore, even though the majority apparently concedes that a plain-meaning interpretation of § 3252(a)(3) would permit juveniles under sixteen to be adjudicated delinquent for having committed statutory rape, I examine this question in some detail here.
This Court has repeatedly stated that the fundamental rule and paramount goal of statutory construction is "to discern and give effect to the intent of the Legislature." State v. O'Neill, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996); see Roddy v. Roddy, 168 Vt. 343, 348, 721 A.2d 124, 128 (1998); Shea v. Metcalf, 167 Vt. 494, 498, 712 A.2d 887, 889 (1998). When the language of a statute is unambiguous, we presume that the Legislature intended the plain and ordinary meaning of that language unless such a construction would violate the purpose of the legislative scheme or lead to absurd results. See In re Weeks, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998); O'Neill, 165 Vt. at 275, 682 A.2d at 946; Chamberlin v. Vermont Dep't of Taxes, 160 Vt. 578, 580, 632 A.2d 1103, 1104 (1993).
In this case, the language of § 3252(a)(3) is plain and unambiguous, and the legislative history of the statute further demonstrates that the Legislature intended the plain meaning expressed therein. In relevant part, § 3252(a)(3) provides that "[a] person who engages in a sexual act with another person . . . under the age of 16. . . shall be imprisoned for not more than 20 years, or fined not more than $10,000.00, or both." (Emphasis added.). Notwithstanding G.T.'s arguments to the contrary, nothing in the language of § 3252(a)(3) suggests that the term "a person" really means "a person over the age of 16." See O'Neill, 165 Vt. at 275, 682 A.2d at 946 ("It is inappropriate to read into a statute something which is not there unless it is necessary in order to make the statute effective.").
Every court considering comparable statutory language in a similar context has arrived at the same conclusion. See, e.g., In re John L., 209 Cal.App.3d 1137, 257 Cal.Rptr. 682, 684 (1989) (juvenile could be declared ward of court for having violated criminal statute making it unlawful for "any person" to engage in lewd or lascivious conduct with minor); In re John C., 20 Conn.App. 694, 569 A.2d 1154, 1156 (1990) (juvenile could be adjudged delinquent for having violated statute making it unlawful for "any person" to engage in acts impairing child's morals; statutory language did not define violators in terms of age); L.L.N. v. State, 504 So.2d 6, 8 (Fla.Dist.Ct.App.1986) (per curiam) (juvenile could be adjudged delinquent for having violated statute making it unlawful for "any person" to engage in lewd or lascivious conduct with minor; statute made no exceptions for perpetrators under age of sixteen); State v. Edward C., 531 A.2d 672, 673 (Me.1987) (per curiam) (juvenile could be adjudged delinquent for having violated statute making it unlawful for "any person" to commit gross sexual misconduct; *311 statute does not require perpetrator to be minimum age); In re J.D.G., 498 S.W.2d 786, 789, 791 (Mo.1973) (juvenile could be adjudged delinquent for having violated statutory rape statute; words "every person" did not exclude persons under seventeen years old); cf. In re J.P., 32 Ohio Misc. 5, 287 N.E.2d 926, 927 (C.P.1972) (juvenile could not be adjudged delinquent for having violated statute making it unlawful for persons "eighteen years of age or over" to carnally know female under sixteen years of age). See generally Annotation, Statute Protecting Minors in a Specified Age Range from Rape or Other Sexual Activity as Applicable to Defendant Minor Within Protected Age Group, 18 A.L.R.5th 856, 869-88 (1994) (citing cases).
Even if we were to find ambiguity in the term "a person" contained in § 3252(a), any doubt as to the intent of the Legislature would be eliminated by examining the legislative history of the statute. The following laws were repealed at the time § 3252(a) was enacted. Section 3201 of Title 13, entitled "Rape by person over sixteen," provided that:

A person over the age of sixteen years who ravishes and carnally knows a female person of the age of sixteen years or more, by force and against her will, or unlawfully and carnally knows a female person under sixteen years of age, with or without her consent, shall be imprisoned not more than twenty years or fined not more than $2,000.00, or both.
(Emphasis added.) Section 3202 of Title 13, entitled "Rape by person under sixteen," provided that:
If a person under the age of sixteen years unlawfully and carnally knows a female person under the age of sixteen years with her consent, both persons shall be guilty of a misdemeanor, and may be committed to the [reform] school. A person under the age of sixteen years who unlawfully and carnally knows any female person by force and against her will shall be punished as provided in section 3201 of this title.
(Emphasis added.) Thus, before being revised in 1977, our sexual assault laws explicitly distinguished between perpetrators over sixteen years of age and those under sixteen years of age. Perpetrators over sixteen faced twenty years in prison if they committed forcible rape or engaged in sexual acts, consensual or not, with females under sixteen. Perpetrators under sixteen were subject to the same punishment for forcible rape, but were guilty of a misdemeanor and could be sent to reform school for having consensual sexual relations with females under sixteen.
The 1977 Senate bill that proposed a revision of the sexual assault laws was discussed and voted on at a hearing before the Senate Judiciary Committee on February 16, 1977. At that hearing, committee members explicitly acknowledged their understanding that there would be no minimum age for perpetrators under the amended law (current § 3252(a)), but that persons under sixteen would no longer be subject to criminal prosecution on felony charges for forcible rape or on misdemeanor charges for underage consensual sex because they would be dealt with under the new juvenile code in delinquency proceedings. See Senate Judiciary Committee hearing, February 16, 1977, at 121-27. In short, when one examines the prior sexual assault laws and the legislative history of the current statute, there is little doubt that the Legislature intended the term "a person" in § 3252(a) to include persons under sixteen. See State v. Read, 165 Vt. 141, 147, 680 A.2d 944, 948 (1996) (courts presume that Legislature makes changes in law with knowledge of prior legislation on same subject); Holmberg v. Brent, 161 Vt. 153, 155, 636 A.2d 333, 335 (1993) (legislative history, as well as history of related statutes on same subject, offer clues to legislative intent).

II.
The majority does not deny the plain meaning of § 3252(a), but purports to follow *312 the approach in In re P.M., 156 Vt. 303, 592 A.2d 862 (1991), by questioning the apparent plain meaning of the statute. See ___ Vt. at ___, 758 A.2d at 304. Contrary to the majority's analysis, P.M. militates strongly in favor of upholding the plain meaning of § 3252(a). In that case, the fourteen-year-old juvenile was adjudicated a delinquent for having violated 13 V.S.A. § 2602, which prohibits "a person" from committing any lewd or lascivious act upon the body "of a child under the age of sixteen years." Rejecting P.M.'s arguments that construing the term "a person" to include persons under the age of sixteen would lead to absurd consequences, we held that fourteen-year-old P.M. was "a person" under the plain and ordinary meaning of the statutory language, and thus "could be found guilty of having committed a delinquent act" for having violated § 2602. P.M., 156 Vt. at 306-07, 592 A.2d at 863. We emphasized that because the case concerned a delinquency proceeding, "the crucial inquiry" was whether the act committed by the juvenile was "designated a crime under a statute, not whether the juvenile could be criminally prosecuted under the statute." Id. at 307, 592 A.2d at 864.
The same is true here. As in P.M., the applicable statute designates the potential perpetrator simply as "a person," without imposing any age limitation. As in P.M., this case concerns a delinquency proceeding. Therefore, the issue is whether G.T.'s act is designated as a crime under § 3252(a)(3), not whether G.T. is subject to criminal prosecution and a twenty-year sentence under the statute. Indeed, notwithstanding G.T.'s suggestion to the contrary, neither he nor any other juvenile is subject to criminal prosecution as an adult under § 3252(a)(3).
At the time § 3252(a)(3) was enacted in 1977, the juvenile code gave the juvenile court exclusive jurisdiction to adjudicate, within the context of delinquency proceedings, any criminal charges against persons under the age of sixteen. See 33 V.S.A. § 634 (Cum.Supp.1977). Criminal proceedings against persons under sixteen had to be transferred to juvenile court. See id. § 635(a) (Cum.Supp.1977). Hence, as the Senate Judiciary Committee recognized in considering the bill revising our sexual assault laws, persons under sixteen violating the new law would not be subject to the punishment imposed by that law, but rather would be subject to delinquency proceedings under the juvenile code.
In 1981, § 635(a) was revised to allow persons under sixteen to be prosecuted as adults in district court for certain criminal offenses specified in 33 V.S.A. § 635a(a) (1981), now 33 V.S.A. § 5506(a). Notably, those specified offenses included, and still include under current law, forcible rape but not statutory rape. See id. § 635a(a)(9); § 5506(a)(9). Thus, as the law stands now, a person under sixteen may be prosecuted in district court for having committed forcible rape, but may not be criminally prosecuted, or subjected to the punishment provided in § 3252(a), for having engaged in consensual sex with another juvenile. In sum, since 1977, persons under sixteen have not been subject to criminal prosecution for statutory rape. Thus, G.T.'s concern that juveniles engaging in consensual sexual relations could be subjected to twenty-year prison sentences is completely unfounded and cannot be the basis for an argument that construing § 3252(a)(3) according to its plain meaning would lead to absurd results.

III.
In the face of this overwhelming evidence of the Legislature's intent to permit delinquency proceedings against juveniles charged with statutory rape, the majority elects to ignore that intent based on three potential problems, two of which have not even been raised, let alone briefed, by the parties.

A.
The majority first states that a plain-meaning construction of § 3252(a)(3) would *313 be inconsistent with state statutory law requiring the reporting of child abuse, see 33 V.S.A. § 4913, which is defined to include rape, 33 V.S.A. § 4912(8), and with federal case law invalidating regulations requiring parental notification when family planning agencies provide contraceptives to minors. According to the majority, if juveniles were included within the ambit of § 3252(a)(3), various professionals, including family planning providers, would have to report every case of consensual sexual activity between juveniles under sixteen years of age, which would violate confidentiality requirements and undermine family planning policy.
As noted, we do not have the benefit of any briefing on this issue from the parties. Indeed, the abuse-reporting statute has not even been brought into question in this case. Nor is there any indication that the potential problems perceived by the majority have ever actually arisen, either in this case or elsewhere. Nonetheless, the majority concludes that, if we were to accept the plain meaning of § 3252(a)(3), any discovery of consensual sexual relations between juveniles under the age of sixteen would automatically trigger the duty of professionals to report the contact as sexual abuse. In so ruling, the majority has impliedly held that those same professionals are required to report, as sexual abuse, any sexual relations that they become aware of between, for example, a sixteen-year-old juvenile and a fifteen-year-old juvenile.
I would not make such determinations, particularly in the absence of an actual controversy and briefing on the subject. Requiring automatic reporting of sexual abuse in every instance of known sexual relations between fifteen-year-old and sixteen-year-old juveniles would have the same negative impact on confidentiality and family planning services lamented by the majority, and yet the majority does not suggest that we abandon § 3252(a)'s plain meaning to assuage those concerns when older juveniles are involved. If we need to address this issue at all, we should simply recognize that whether a relationship is an abusive one depends upon the particular circumstances involved. Cf. J.A.S. v. State, 705 So.2d 1381, 1387 (Fla.1998) (while interested parties seek bright-line rules to determine whether disputed conduct is sanctionable, unique facts of each case must be considered because human experience is not so easily categorized, particularly when it concerns intimate relationships between juveniles).
Although "sexual abuse" is statutorily defined to include "rape," see 33 V.S.A. § 4912(8), the definition does not include the term "statutory rape," which is viewed as distinct from common-law rape. See Black's Law Dictionary 1134, 1266 (5th ed.1979) (defining "statutory rape" separately from "rape" and noting that modern statutes often materially change commonlaw definition of rape to create distinct offense). To be sure, "consensual" sex between a juvenile and an adult would ordinarily constitute sexual abuse, but consensual sex between two juveniles would not necessarily be abusive in nature, depending upon the particular circumstances. Our law requires various professionals and others working with children to report abuse when they have "reasonable cause to believe that any child has been abused." 33 V.S.A. § 4913(a). That discretionary standard appears to allow professionals to use their expertise in evaluating particular circumstances before reporting abuse. Cf. Planned Parenthood Affiliates v. Van de Kamp, 181 Cal.App.3d 245, 226 Cal.Rptr. 361, 365 (1986) (citing California statute requiring reporting of abuse when it is objectively reasonable for person, while drawing upon training and expertise, to entertain suspicion of abuse).
I raise these points only to demonstrate that there are issues that need to be debated and considered within the context of an actual controversy before we construe laws not at issue in this case. Unlike the majority, I am not willing to assume that a rational reading of our child abuse reporting *314 laws requires us to ignore the Legislature's clear intent to permit delinquency petitions to be filed against juveniles accused of statutory rape.
The majority relies heavily on a California intermediate appellate court  Planned Parenthood  to support its view that Vermont's child-abuse reporting laws require this Court to ignore the plain meaning of § 3252(a)(3). An examination of that case and subsequent California cases considering it reveals that it offers no support whatsoever for the majority's construction of § 3252(a)(3). As the majority notes, this Court discussed Planned Parenthood at length in P.M. See ___ Vt. at ___, 758 A.2d at 304. But, in contrast to what the majority holds today, we quoted extensively from the California case and relied upon its analysis in declining to read a minimum age limit for perpetrators into 13 V.S.A. § 2602, which, like § 3252(a)(3), designates potential perpetrators simply as "a person." See P.M., 156 Vt. at 309, 592 A.2d at 865.
Unlike the instant case, Planned Parenthood directly confronted the issue of whether the state's child-abuse reporting law required professionals who had "no knowledge or suspicion of actual abuse, to nevertheless report a minor as a child abuse victim solely because the minor is under the age of 14 and has indicated that he or she engages in voluntary, consensual sexual activity with another minor of similar age." 226 Cal.Rptr. at 363. In that case, family planning agencies were challenging an attorney general opinion concluding that professionals were required to report any sexually active child under fourteen as a sexual-abuse victim, notwithstanding their professional judgment regarding the circumstances of each particular case. See id. at 366-67. The court held that the child-abuse reporting law did not apply to "voluntary, consensual sexual behavior among minors under the age of 14," when, in the judgment of the reporting professional involved, the sexual contact bore no indicia of actual abuse. Id. at 381 (emphasis added).
In reaching this conclusion, the court stated that it "does not appear that a minor under 14 may be found delinquent" for violating a statute prohibiting lewd and lascivious contact with a minor. Id. at 376. As we pointed out in P.M., 156 Vt. at 309, 592 A.2d at 864-65, however, the California court acknowledged that minors over fourteen had been found delinquent for having violated the statute, which was generally viewed as applying to order minors who sexually exploited younger, sexually naive children. See Planned Parenthood, 226 Cal.Rptr. at 376. Accordingly, the court explicitly limited its holding "to voluntary conduct among minors under 14 years of age." Id. at 377 n. 14; see John L., 257 Cal.Rptr. at 683-84 (implication in Planned Parenthood that voluntary sexual conduct between minors under fourteen years of age is not encompassed by statute prohibiting "any person" from committing lewd or lascivious act with child does not extend to minors over fourteen years of age).
Subsequent California cases have rejected even the limited dicta in Planned Parenthood suggesting that children under fourteen could not be found delinquent for having violated the statute prohibiting lewd and lascivious acts with a child. For example, in In re Jerry M., 59 Cal.App.4th 289, 69 Cal.Rptr.2d 148, 151-52 (1997), the court concluded that an eleven-year-old child could be subject to delinquency proceedings for having committed lewd and lascivious acts against older children. In so ruling, the court noted that, notwithstanding the dictum in Planned Parenthood, several courts had concluded that minors under fourteen years of age could be adjudicated as delinquents for having committed lewd and lascivious acts against other children. See id. at 151. Similarly, the court in In re Paul C., 221 Cal.App.3d 43, 270 Cal.Rptr. 369, 372-73 (1990), rejected the implication in Planned Parenthood that children under fourteen could *315 never be perpetrators under a statute prohibiting "any person" from committing a lewd and lascivious act with a child. In the court's view, the fact that consent could not be used as a defense to having violated the statute did not mean that all children under fourteen are incapable of understanding the wrongdoing of their sexual conduct and thus not subject to delinquency proceedings. See id. at 373-74.
In short, Planned Parenthood does not support the majority's holding that juveniles under sixteen cannot be adjudicated as delinquents for having committed statutory rape. The California court's decision protecting juveniles from dissemination of information concerning their sexual practices is not "the equivalent of recognizing a right to engage in such practices." In re T.A.J., 62 Cal.App.4th 1350, 73 Cal.Rptr.2d 331, 336 (1998).

B.
Another reason given by the majority for its holding today is that applying the plain meaning of § 3252(a)(3) would "[raise] important privacy concerns that implicate constitutional rights." See ___ Vt. at ___, 758 A.2d at 307. Not only was this issue never raised by the parties, but the majority fails to address it head on. The majority does not conclude that § 3252(a)(3) would be unconstitutional if we were to construe it as the Legislature intended. Nor does the majority even acknowledge or apply any test for determining whether a constitutional violation exists. Thus, there is no weighing of interests and no determination of whether, or the extent to which, the Vermont Constitution protects sexual privacy with respect to minors. Indeed, the majority expressly declines to consider whether any such privacy interest exists. See ___ Vt. at ___, 758 A.2d at 307; cf. T.A.J., 73 Cal.Rptr.2d at 336-37, 341 (no case has suggested that legislature does not have greater latitude to regulate or proscribe voluntary sexual activity "by or with" minors than it does with regard to voluntary sexual activity engaged in by adults; misdemeanor statutory rape law does not unconstitutionally deprive minors of their right to engage in private consensual sexual activity); Planned Parenthood, 226 Cal.Rptr. at 379 (although mature minor enjoys same sexual privacy rights as adult, state's burdening of minor's rights is governed by less rigorous standard than compelling interest because of state's greater latitude in regulating conduct of children). In brief, the majority declines to apply § 3252(a)(3)'s plain meaning because of privacy implications neither identified, examined, or weighed against the state's interests.
In noting its privacy concerns, the majority relies primarily upon B.B. v. State, 659 So.2d 256 (Fla.1995). Again, examination of the case law reveals that the majority's reliance is unfounded. In B.B., a plurality of the Florida Supreme Court held that a statute making it a second-degree felony for minors "of previous chaste character" to engage in consensual sexual activity violated the Florida Constitution's right of privacy as applied to two sixteen-year-old juveniles engaging in consensual sex. Id. at 259-60. Thus, the relevant statute and the factual circumstances of that case differ significantly from the present case. Further, not only have courts in other jurisdictions rejected B.B.'s plurality holding, e.g., T.A.J., 73 Cal. Rptr.2d at 337-38 (rejecting B.B. and concluding that minors do not have constitutionally protected privacy interest in engaging in sexual intercourse), but in 1998 a unanimous Florida Supreme Court disavowed the very implication in B.B. that the majority now relies on. The court clarified that in B.B. it had "held, in essence, that the State could not single out, solely on the basis of chastity, one of two consenting sixteen-year-old minors for criminal prosecution." J.A.S., 705 So.2d at 1385.
The circumstances in J.A.S., unlike in B.B., were strikingly similar to those in our case. In J.A.S., the court confronted *316 the question of whether two fifteen-year-old boys could be adjudicated delinquent for having had consensual sexual intercourse with two twelve-year-old girls, in violation of Florida's statutory rape law. With respect to B.B., the court stated: "We find B.B. clearly distinguishable because while both `defendant' and `victim' were sixteen in that case, here we have two fifteen year-old boys engaging in sexual activity with two twelve-year-old girls." Id. at 1385. Declining to find that minors have an open-ended privacy right to engage in sexual intercourse with other minors, thereby shielding them from adjudication as delinquents, the court concluded that "whatever privacy interest a fifteen-year-old minor has in carnal intercourse is clearly outweighed by the State's interest in protecting twelve-year-old children from harmful sexual conduct, irrespective of whether the twelve-year-old `consented' to the sexual activity." Id. at 1386. The court further concluded that Florida's statutory rape law, when applied to the circumstances of that case, was "being primarily utilized as a shield to protect the twelve-year-old girls, rather than a weapon to arbitrarily adjudicate the fifteen-year-old boys as delinquent." Id.
The same is true in this case. The primary purpose of Vermont's statutory rape law is to protect children from harmful sexual contact. This is no less true when two juveniles are involved. Indeed, in the latter situation, not only is the victim protected, but the "perpetrator" is subject only to delinquency proceedings aimed at rehabilitation rather than punishment.
Under the majority's holding, a fifteen-year-old minor cannot be found delinquent for the statutory rape of, say, a nine- or ten-year-old minor. The majority states that this will not impose any great burden on prosecutors because they can always seek an adjudication of delinquency based on an allegation of forcible rape under § 3252(a)(1). See ___ Vt. at ___, 758 A.2d at 309; § 3252(a)(1). This reasoning creates the bizarre anomaly that the term "a person" contained in § 3252(a) means "a person over sixteen" when used in conjunction with subsection three dealing with statutory rape, but means "any person, including a person under sixteen," when used in conjunction with subsection one dealing with forcible rape. More importantly, the majority fails to acknowledge that there will be instances, not unlike the present case, where the coercion is subtle and results from the different age, mental capacity, or maturity of the participants engaged in the conduct. Although a juvenile court might conclude in some cases that coercion was involved simply because the victim's age precluded true consent, there will be other cases in which forcible rape will be difficult to prove, notwithstanding the presence of subtle coercion resulting from the age differential of the participants or other factors.
In criminal statutory rape cases, the use of force or coercion is relevant at trial not only for purposes of sentencing, but also to help the factfinder to understand the nature of the offense and weigh the credibility of the witnesses. See State v. Searles, 159 Vt. 525, 529-30, 621 A.2d 1281, 1284 (1993); State v. Thompson, 150 Vt. 640, 645-46, 556 A.2d 95, 99 (1989). The same applies in delinquency proceedings, perhaps more so. One could argue that prosecutors should be given the discretion to bring delinquency petitions against juveniles based on an allegation of statutory rape, and to demonstrate that providing the alleged perpetrator with rehabilitative services would be appropriate under the circumstances because of the age differential of the participants or the existence of other factors suggesting that coercion was at work.

C.
Which brings us to the majority's third reason for disregarding § 3252(a)(3)'s plain meaning  that giving prosecutors unbounded discretion to decide when to bring delinquency petitions based on an *317 allegation of statutory rape effectively gives them the power to make, rather than just to enforce, the law. Prosecutors have always had discretion to decide whether to prosecute persons who have violated the law. See T.A.J., 73 Cal.Rptr.2d at 341 (question of when, who, and under what circumstances minors should be charged under statutory rape law must reside within sound exercise of prosecutorial discretion). Because § 3252(a)(3) "is not susceptible of interpretation as to which conduct is covered and which is exempt," State v. Barlow, 160 Vt. 527, 530, 630 A.2d 1299, 1301 (1993) (rejecting argument that Vermont's statutory rape law is subject to potentially abusive exercise of prosecutorial discretion), this appeal does not concern a situation in which the prosecutor has discretion to decide whether certain conduct is a criminal offense. See In re P.M., 156 Vt. at 315, 592 A.2d at 868 (Dooley, J., dissenting) ("Discretion to prosecute persons who have committed crimes is one thing; prosecutorial discretion to decide whether conduct is criminal in the first instance is another.").
As with the other concerns it relies upon in reaching its holding, the majority's concern regarding the breadth of prosecutorial discretion is speculative in nature. There is not the slightest indication that any abuse of that discretion occurred in this case or is occurring generally. Nor does this case present any equal protection or due process claims that could conceivably arise when one juvenile is subjected to delinquency proceedings for engaging in consensual sex with another juvenile. Under the facts of this case, which indicate that fourteen-year-old G.T. surprised twelve-year-old M.N. by suddenly engaging in sexual intercourse with her even though the two had had no previous sexual contact, the prosecutor acted properly in filing a petition of delinquency alleging statutory rape against only G.T. and not M.N. As the trial court stated, even though the difference between the two juveniles in this case was only two years, those two years between twelve and fourteen often encompass significant differences in psychological growth, cognitive skills, and sexuality.

IV.
I recognize that historically the crime of statutory rape has focused upon preventing older persons from corrupting the morals of minors. See 3 C. Torcia, Wharton's Criminal Law § 285, at 76 (15th ed.1995). Like statutory rape provisions in other jurisdictions, § 3252(a)(3) reflects a policy judgment that sexual conduct in violation of statutory age limitations is predatory and exploitative in nature. See Barlow, 160 Vt. at 530, 630 A.2d at 1301 ("The Legislature . . . had a compelling interest in protecting minors when it criminalized sexual relations between adults and minors . . . ."); Searles, 159 Vt. at 528, 621 A.2d at 1283 ("Vermont law reflects our enhanced concern for the protection and well-being of minors and the gravity we attach to crimes involving the exploitation of minors."). Accordingly, we have interpreted the statutory rape law as creating a strict-liability offense  once the State has proved the sexual conduct, "[n]othing more than a calendar and the person's birth certificate are required to determine the statute's applicability." Barlow, 160 Vt. at 530, 630 A.2d at 1301.
Given the nature and history of statutory rape laws, not all legislators or judges would agree that it is appropriate to subject youths who engage in consensual sex to court intervention, even in the context of delinquency proceedings. Some would say that such conduct is better left to resolution by individual families, and that, absent a specified age differential between the actors, it should not be the basis for a delinquency petition in family court. See Annotation, supra, 18 A.L.R.5th at 865 (citing jurisdictions that in recent years have adopted sex offense statutes requiring that minor offender be specified minimum age or that there be specified age differential between perpetrator and victim); *318 Model Penal Code § 213.3(1)(a), at 133, 135 (1980) (consensual sexual intercourse punished as third-degree felony where victim is less than sixteen years old and actor is at least four years older than victim). This view derives support from the inherent contradiction in adjudging a juvenile a delinquent based on his having committed a crime to which he could not have consented had he been deemed the victim, and from the extent of the family court's power to intervene in the lives of those adjudged to be delinquents. See 33 V.S.A. § 5529(a) (upon finding child to be delinquent, juvenile court may place child under protective supervision, place child on probation under such conditions as court may prescribe, or transfer legal custody to Commissioner of Social and Rehabilitation Services, who may place child in institution or facility that commissioner deems to be in best interests of child).
Our duty, however, is to give effect to the intent of the Legislature. That intent is clear in this case. I do not share the majority's belief that the Legislature's intent to permit intervention by the family court when juveniles engage in "consensual" sexual acts with other juveniles under the age of sixteen creates absurd or irrational consequences. Indeed, Vermont "has long recognized an obligation to protect its children from others and from themselves." Barlow, 160 Vt. at 528, 630 A.2d at 1300 (emphasis added). The salutary purposes of the statutory rape law identified by this Court  reducing teenage pregnancy, preventing venereal disease and damage to reproductive organs, and protecting minors who may be unable to give considered consent or who may have a heightened vulnerability to physical and psychological harm  are furthered regardless of the age of the alleged perpetrator. See id. at 528, 530, 630 A.2d at 1300-01 (recognizing that minors often lack experience, perspective, and judgment to avoid choices that minors often lack experience, perspective, and judgment to avoid choices that could be detrimental to themselves and others); In re Hildebrant, 216 Mich.App. 384, 548 N.W.2d 715, 716 (1996) (per curiam) (concluding that bringing delinquency proceedings against juvenile for engaging in consensual sex with her adopted brother was not contrary to public policy, given that statutory rape law is based upon presumption that children's immaturity prevents them from appreciating full magnitude and consequences of their conduct).
Because the focus of delinquency proceedings in general, and the statutory rape law in particular, is on protecting children, the age of the offender is not the primary concern. See Hildebrant, 548 N.W.2d at 716. When juvenile offenders are involved, the principal interest is not punishment, but rather providing the juveniles with the care, guidance, counseling, or therapy that is conducive to their best interests, as well as the best interests of the public. See P.M., 156 Vt. at 310, 592 A.2d at 865; J.A.S., 705 So.2d at 1386-87; Hildebrant, 548 N.W.2d at 717.
As currently written, § 3252(a)(3) plainly permits juveniles to be adjudicated delinquent for having committed statutory rape. Without question, there are significant public policy considerations concerning whether to permit delinquency proceedings to proceed against minors engaging in consensual sexual relations. But the Legislature, and not this Court, is in the best position to weigh those policy considerations and change that law if need be. See Medical Center Hosp. v. Lorrain, 165 Vt. 12, 16, 675 A.2d 1326, 1330 (1996). Because the majority ignores the plain meaning and clear legislative intent of § 3252(a)(3) based only on speculative concerns and unwarranted presumptions, I dissent from its holding that persons under sixteen years of age cannot be found delinquent for having committed statutory rape.
I am authorized to say that Justice GIBSON joins in this dissent.
NOTES
[1] The term "sexual act" in § 3252 is broader than sexual intercourse, including "any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another." 13 V.S.A. § 3251(1). No data are available on the percentage of juveniles who have committed a sexual act by their sixteenth birthday.
[2] We agree with the dissent that a fifteen-year-old juvenile does not face a penalty of twenty years in jail. However, the juvenile can be placed in a "treatment, rehabilitative, or educational institution or facility," 33 V.S.A. § 5529(a)(3), and the adjudication of delinquency becomes part of the juvenile's record available to the court in a future sentencing proceeding. Id. § 5536(b)(3).
[3] To avoid the conflict between the reporting law and the coverage of statutory rape, the dissent suggests that we interpret rape, as defined in § 4912(8), as not including statutory rape, and the professional's duty to report abuse, a term explicitly defined in § 4912(2), as sufficiently discretionary to allow the professional not to report statutory rape in some instances. If these are the proper interpretations of the statutes involved, they deviate far more from the plain meaning of the Legislature's words than the deviation from the language of 13 V.S.A. § 3252(a)(3) accepted in this opinion.
[4] The dissent suggests that we ignore B.B. and recognize J.A.S. because the facts here are closer to those in the latter case. Our task is neither to resolve the tension between Florida decisions nor to determine whether it would be constitutional to prosecute G.T. on the facts before us. Instead, our responsibility is to construe 13 V.S.A. § 3252 in light of the factual circumstances that would be covered by alternative interpretations. If we construe the statute to allow prosecution based on the facts in J.A.S., we must also construe it to allow prosecution on the facts of B.B.
[5] On this point, we apparently differ with the dissent, which argues that there will be cases in which the State will not be able to prove coercion or lack of consent despite an age difference between the juveniles. The one example before us shows to the contrary since the juvenile court found the elements of coercion, despite not having to make these findings under § 3252(a)(3), so that the prosecutor would have prevailed under § 3252(a)(1)(B). In essence, the dissent seeks to define a crime, different from that in either § 3252(a)(1) or 3252(a)(3), a crime that the State never has to prove. This reinforces our point that the dissent's construction of the statute necessarily creates an overly-broad concept of prosecutorial discretion.
[6] G.T.'s motion to vacate his delinquency adjudication is denied as moot.