NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12351


COMMONWEALTH  vs.  WILBUR W., a juvenile.



Essex.     January 10, 2018. - April 25, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, & Kafker,
JJ.


Rape.  Strict Liability.  Constitutional Law, Vagueness of
    statute, Equal protection of laws.  Due Process of Law,
    Vagueness of statute, Selective prosecution.  Selective
    Prosecution.



Complaint received and sworn to in the Essex County
Division of the Juvenile Court Department on August 24, 2009.

The case was tried before José Sánchez, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Joseph Maggiacomo, III, for the juvenile.
Marina Moriarty, Assistant District Attorney, for the
Commonwealth.
The following submitted briefs for amici curiae:
Yale Yechiel N. Robinson, pro se.
Robert F. Hennessy & Merritt Schnipper for Youth Advocacy
Division of the Committee for Public Counsel Services.
Gary D. Buseck, Bennett H. Klein, & Patience Crozer for
GLBTQ Legal Advocates & Defenders & another.
Marsha L. Levick, Riya S. Shah, & Lisa Swaminathan, of
Pennsylvania, for Juvenile Law Center & another.

GAZIANO, J.  The crime of statutory rape, G. L. c. 265, § 23, is a strict liability offense.  To prove statutory rape, the Commonwealth is required to establish that the accused had sexual intercourse with a person who was less than sixteen years old at the time.  See Commonwealth v. Bernardo B., 453 Mass. 158, 172 (2009).  As a matter of law, a person below the age of sixteen is deemed incapable of consenting to sexual intercourse.  Therefore, lack of consent is not an element of the offense, and the intent of the accused is not relevant.  See G. L. c. 265, § 23; Commonwealth v. Miller, 385 Mass. 521, 522 (1982).  When two minors have consensual sexual relations, both of whom are members of the class the statute is designed to protect, each has committed a statutory rape.  This case requires us to decide whether, as applied to a juvenile offender under the age of sixteen, a conviction of statutory rape was constitutional, where the juvenile maintains that he was involved in consensual sexual experimentation with another child.

In 2009, a delinquency complaint issued against the juvenile, charging him with two counts of rape of a child by force, G. L. c. 265, § 22A, and dissemination of child pornography, G. L. c. 272, § 29B.  At the time of the alleged offenses, the juvenile was twelve years old and the victim was eight years old.  Following a trial in the Juvenile Court, a

jury found the juvenile delinquent on the lesser included offenses of statutory rape. The juvenile filed a notice of appeal from the adjudication of delinquency, and we allowed his motion for direct appellate review.

The juvenile contends that enforcement of the strict liability statutory rape charge against him violates his Federal and State constitutional rights to due process and equal protection. He argues that imposition of criminal liability on a child for a strict liability offense, where the premise of the offense is that a child under sixteen lacks the capacity to understand and consent to the conduct, is fundamentally unfair. The juvenile maintains that a child under sixteen cannot be deemed to understand and assume the legal risks of engaging in sexual activity with another child under the age of sixteen, as the statute requires of an adult, and that the imposition of criminal responsibility for peer-aged sexual experimentation is contrary to the statutory purpose of protecting children from sexual abuse. He also argues, for the first time on appeal, that he should have been considered a victim of statutory rape, and that the government wrongfully singled him out for prosecution. The issues the juvenile raises as to experimentation among consenting juveniles are not before us in this case, where the victim testified that he was afraid and felt compelled to comply with the juvenile's demands.

Accordingly, we conclude that, as applied in these circumstances, enforcement of the statutory rape charge is constitutional, and affirm the adjudication of delinquency.[1]

1.  Background.  To determine whether statutory rape is constitutional, as applied to the juvenile's conduct, we examine the evidence in the light most favorable to the Commonwealth. See Commonwealth v. Oakes, 407 Mass. 92, 95 (1990); Commonwealth v. Bohmer, 374 Mass. 368, 370 (1978).  In the summer of 2009, the victim was an eight year old third grader, who lived with his father in a city near Boston.  The victim met the juvenile, who was twelve years old and a seventh grader, when the victim moved into the neighborhood earlier that year.  The victim and the juvenile became friends.  They played together at the park and with other children in the neighborhood, and they played video games at the victim's apartment.  Carol,[2] who had been friends with the victim's mother, was his live-in caretaker. Carol also watched the juvenile on occasion, and the juvenile referred to her as "Grammy."

On August 10, 2009, as he had on previous occasions, the juvenile visited the victim for a sleepover while the victim's

---

[1] We acknowledge the amicus briefs submitted by the youth advocacy division of the Committee for Public Counsel Services; the Juvenile Law Center and the Children and Family Justice Center; GLBTQ Legal Advocates & Defenders and the American Civil Liberties Union of Massachusetts; and Yale Yechiel N. Robinson.

[2] A pseudonym.

father was working a late shift.  During the evening, the victim and the juvenile went into the victim's bedroom to play a video game.  While both boys were on the bed taking turns using the video game controller, the juvenile told the victim to stand next to a bureau.  The bureau, which was "the same height as [the victim], maybe a little bit taller," was positioned on an interior wall adjacent to the bedroom door, such that, when standing in the space next to the bureau, the two boys were not visible from the doorway.  The victim did not want to do this, but complied because the juvenile told him to do it.

The juvenile instructed the victim to "pull down [his] pants" so that he could put his "penis" in the victim's "butt." The victim was "shivering" and "scared."  He testified:

Q.:  "And what did you think or feel when he told you that?

A.:  "Like, I was kinda like shivering, like, scared."

Q.:  "Okay.  And why were you scared?"

A.:  " Because I didn't, like -- because I was, like, I didn't like, like -- like, I was scared because --"

Q.:  "Did you want to do that?"

A.:  "No."

The juvenile pulled down his own pants, and told the victim to put his mouth on the juvenile's penis.  The victim complied for "two seconds" because the juvenile was "bigger," and he was afraid of what the juvenile would do to him.  The juvenile then

inserted his penis in the victim's "butt."  The victim testified that it hurt, and he almost cried.[3]

Because the boys were too quiet, Carol announced she was entering the room to check on them.  The juvenile told the victim to get on the bed.  Both boys pulled up their pants and sat on the bed.  When Carol entered the room, she found them sitting on the bed playing the video game.  The victim did not say anything to Carol that night because he did not want the juvenile to punch him.

The victim's father drove the victim to day camp the next morning.  Before leaving for camp, the victim ran into Carol's room to say goodbye, and she took his cellular telephone.  Later, she found a photograph of a boy's penis on the cellular telephone.  When Carol picked up the victim from camp, she asked

---

[3] The juvenile points out that the victim's testimony on cross-examination was not entirely consistent with his testimony on direct examination, or during an earlier sexual abuse intervention network (SAIN) interview, and the victim agreed on cross-examination that he had described certain events differently from how he had described them at the SAIN interview.  During cross-examination, specific portions of the victim's SAIN interview were introduced as prior inconsistent statements.  The juvenile notes that, in addition to testifying that he was scared because the juvenile was "bigger," and because the victim thought that the juvenile "might do something" if the victim did not comply, the victim also testified that the reason he complied was "to get [the juvenile] to stop asking"; that the juvenile did not hit or threaten the victim; and did not push the victim behind the dresser.  On cross-examination, the victim also testified somewhat differently about the juvenile's actions with his "butt," and whether the juvenile's act "hurt."

him about the photograph.  The victim told her that the juvenile had taken it.  Carol initially scolded the victim for having inappropriate photographs on his telephone, and told him that he "could get into a lot of trouble."  During the drive home, the victim asked, "Well, what does it mean when someone tries to put their private into your butt?"  Carol asked if someone had done that to him.  The victim "shook his head yes."  Carol asked, "Who?"  The victim answered that it was the juvenile.  Carol reported the victim's statements to the victim's father and the police.

At the close of the evidence, the judge instructed the jury on rape of a child with force, pursuant to G. L. c. 265, § 22A, including the theory of constructive force, and the lesser included offense of statutory rape.  He also instructed the jury on dissemination of child pornography.  The jury returned delinquency findings on the lesser included offense of statutory rape, and found the juvenile not delinquent on the charge of dissemination of child pornography.  The judge sentenced the juvenile to three years of probation with special conditions. Following an evidentiary hearing, the judge allowed the juvenile's motion for relief from the obligation to register as a sex offender, pursuant to G. L. c. 6, § 178E (f), finding that the juvenile did not pose a risk of reoffending or a danger to the public.

2. <u>Discussion</u>. The juvenile raises three arguments concerning the constitutionality of statutory rape where both the victim and the individual charged with the offense are juveniles.[4] First, he contends that his adjudication of delinquency violates his right to the due process of law because the Legislature did not intend to impose strict liability on a person below the age of sixteen. Second, he contends that statutory rape fosters arbitrary and discriminatory enforcement and is therefore void for vagueness. Third, the juvenile contends that he was unfairly selected for prosecution in violation of his right to equal protection under the law.[5]

---

[4] The juvenile did not assert these constitutional claims in the Juvenile Court. As a general rule, we "decline to consider constitutional issues raised for the first time on appeal in order to avoid an unnecessary constitutional decision" (quotation omitted). <u>Commonwealth</u> v. <u>Guzman</u>, 469 Mass. 492, 500 (2014). Here, however, we exercise our discretion to resolve the constitutional issues because the record is fully developed, and the appeal presents important questions of public concern. See <u>Gagnon, petitioner</u>, 416 Mass. 775, 780 (1994).

[5] The juvenile also asserts error in the judge's decision to deny his motion for a required finding of not delinquent on the charge of rape of a child by force. In denying the juvenile's motion for a required finding, the judge stated, "As to the forcible rape of a child, I will concede that the issue of constructive force is a close one, but based on the testimony I find that there is sufficient evidence to at least put that issue before the jury." The juvenile argues that the evidence, considered in the light most favorable to the Commonwealth, was insufficient to prove the element of physical or constructive force. Because the juvenile was acquitted of the charge, the issue whether the Commonwealth proved constructive force is not properly before us.

a.  Due process challenge.  General Laws c. 265, § 23, as appearing in St. 1974, c. 474, § 3, provides:  "Whoever unlawfully has sexual intercourse or unnatural sexual intercourse, and abuses a child under [sixteen] years of age, shall be punished . . . ."  In Commonwealth v. Gallant, 373 Mass. 577, 581-585 (1977), and Bernardo B., 453 Mass. at 170-172, we traced the history of statutory rape from its English common-law roots to the most recent revisions of G. L. c. 265, § 23, in 1974.  Although G. L. c. 265, § 23, has evolved over time, our long-standing interpretation of the statute is that it imposes strict liability for anyone who engages in "sexual intercourse or unnatural sexual intercourse" with a person who is less than sixteen years old.  See Commonwealth v. Murphy, 165 Mass. 66, 70 (1895).  See, e.g., Miller, 385 Mass. at 522; Commonwealth v. Moore, 359 Mass. 509, 514-515 (1971).  Accordingly, the only elements the Commonwealth is required to prove are "(1) sexual intercourse or unnatural sexual intercourse with (2) a child under sixteen years of age."  Bernardo B., supra at 172, quoting Miller, supra.

The juvenile contends that the imposition of strict liability for statutory rape, as applied to his case, violates due process rights secured by the United States Constitution and

the Massachusetts Declaration of Rights.[6]  He maintains that the
Legislature's decision to impose strict liability in cases of
statutory rape rests on two related policies:  that vulnerable
children need to be protected from the dangers of sexual abuse,
and that adults assume the risk inherent in having sexual
relations with a child who is younger than the statutory age of
consent.  See Murphy, 165 Mass. at 69-70 ("it is deemed best to
require everybody at his peril to ascertain whether his act
comes within the legislative prohibition").  See also United
States v. Ransom, 942 F.2d 775, 777 (10th Cir. 1991), cert.
denied, 502 U.S. 1042 (1992) (statutory rape laws protect
children from sexual abuse "by placing the risk of mistake as to
a child's age on an older, more mature person").  The juvenile
argues that, unlike an adult, an individual who is under the age
of sixteen has limited capacity to make reasoned choices or to
understand the consequences of his or her behavior.  As a
result, he contends, the Legislature's rationale for imposing
strict liability "make[s] little sense" when applied against a
twelve year old engaged in peer-aged sexual experimentation.

---

[6] A facial challenge, by contrast, would have required the
juvenile to prove that no set of circumstances exists under
which the statute would be valid.  See United States v. Salerno,
481 U.S. 739, 745 (1987).  This is a difficult burden to meet.
"A facial challenge to the constitutional validity of a statute
is the weakest form of challenge, and the one that is the least
likely to succeed."  Blixt v. Blixt, 437 Mass. 649, 652 (2002),
cert. denied, 537 U.S. 1189 (2003).

i.  Standard of review.  Substantive due process prohibits governmental conduct that "shocks the conscience" or infringes on rights "implicit in the concept of ordered liberty" (citation omitted).  Commonwealth v. Fay, 467 Mass. 574, 583, cert. denied, 135 S. Ct. 150 (2014).  "In substantive due process analysis, the nature of the individual interest at stake determines the standard of review . . . ."  Aime v. Commonwealth, 414 Mass. 667, 673 (1993).  If a statute uses a suspect classification or implicates a fundamental right, we apply strict judicial scrutiny.  Goodridge v. Department of Pub. Health, 440 Mass. 309, 330 (2003).  See Doe v. Acton-Boxborough Reg. Sch. Dist., 468 Mass. 64, 75 (2014) (classifications based on gender, race, color, creed, and national origin considered suspect); Gillespie v. Northampton, 460 Mass. 148, 153 (2011) ("fundamental right is one that is deeply rooted in this Nation's history and tradition" [quotation and citation omitted]).  Under strict scrutiny analysis, a statute satisfies due process only when it is "narrowly tailored to further a legitimate and compelling governmental interest."  Aime, supra.

When a statute is not subject to strict scrutiny in considering a substantive due process challenge, it is subject to rational basis review.  Gillespie, 460 Mass. at 153.  For due process purposes, a statute has a rational basis if it "bears a real and substantial relation to the public health, safety,

morals, or some other phase of the general welfare." Goodridge,
440 Mass. at 330.  See Gillespie, supra ("a statute is
constitutionally sound if it is reasonably related to the
furtherance of a valid State interest").  In reviewing the
constitutionality of a statute, we are mindful that "all
rational presumptions are made in favor of the validity of every
legislative enactment."  Commonwealth v. Finnigan, 326 Mass.
378, 379 (1950).

The juvenile has not argued that imposition of strict
liability for statutory rape violates a fundamental right,[7] or
that he was subject to a suspect classification.  We therefore
examine his claim that the legitimate purposes of statutory rape

[7] Two of the amicus briefs do urge application of a strict
scrutiny standard of review in this case.  The youth advocacy
division of the Committee for Public Council Services (CPCS)
urges this court to apply strict scrutiny to its due process
analysis based on the theory that enforcement of statutory rape
liability implicates a minor's fundamental right of privacy.  To
support this argument, the brief cites Lawrence v. Texas, 539
U.S. 558, 578-579 (2003), in which the United States Supreme
Court extended constitutional privacy protections to "two adults
who, with full and mutual consent from each other," engaged in
same-sex intimate conduct.  In that case, however, the Court
emphasized that the protected liberty interest did not extend to
minors and did "not involve persons who might be injured or
coerced."  Id. at 578.  In their joint amicus brief, GLBTQ Legal
Advocates & Defenders and the American Civil Liberties Union of
Massachusetts rely on decisions in other States recognizing that
statutory rape charges may interfere with a minor's protected
right to privacy.  See B.B. v. State, 659 So. 2d 256, 258-260
(Fla. 1995); In re G.T., 170 Vt. 507, 515-518 (2000).  We leave
the issue whether enforcement of statutory rape laws implicates
a fundamental privacy right of minors for another day, when it
is properly raised, and fully briefed, by the parties.  See
Pineo v. Executive Council, 412 Mass. 31, 35 n.6 (1992).

strict liability are not served by his adjudication of delinquency under the rational basis standard of review.

ii. Whether imposition of strict liability for statutory rape where the perpetrator is under sixteen offends due process. Although statutes that do not require proof of mens rea are disfavored, see Staples v. United States, 511 U.S. 600, 606 (1994), the Legislature is vested with wide latitude to declare what constitutes a crime; this includes the authority to create strict liability offenses. See Commonwealth v. Peterson, 476 Mass. 163, 165 (2017); Commonwealth v. Chavis, 415 Mass. 703, 709 n.9 (1993); Commonwealth v. Alverez, 413 Mass. 224, 229-233 (1992). The Legislature's exercise of its authority to define strict liability offenses extends to imposition of strict liability for the offense of statutory rape. "Strict criminal liability is not necessarily a denial of due process of law, and in the case of statutory rape it is not." Miller, 385 Mass. at 525. See Commonwealth v. Knap, 412 Mass. 712, 715 (1992) (mens rea is general principle of jurisprudence and not constitutionally mandated in child sexual assault cases). See also Morissette v. United States, 342 U.S. 246, 250-251 & n.8 (1952) (recognizing that, while guilt generally requires proof of culpable mental state, exception imposing strict liability for sexual offenses against children, designed to protect children, is warranted).

We do not agree with the juvenile's argument that the Legislature did not intend to prohibit anyone from having sexual intercourse with a person below the age of sixteen. The Legislature established an age of consent because children lack the maturity to "understand the physical, mental, and emotional consequences of intercourse." See Commonwealth v. Dunne, 394 Mass. 10, 20 n.7 (1985). More recently, we have noted that there is "no doubt" that the Legislature enacted statutory rape laws in order to "protect all children under sixteen years old from sexual abuse." Bernardo B., 453 Mass. at 171. See Gallant, 373 Mass. at 583.

Moreover, the facts in this case, considered in the light most favorable to the Commonwealth, do not support the view, as the juvenile suggests, that this was a case of juvenile experimentation among peers rather than a case of sexual abuse. To the contrary, the record at trial indicates that the juvenile was the aggressor, who arranged the victim's position behind a dresser in order to avoid detection. The jury were warranted in finding that the victim, a boy four years younger than the juvenile, complied with the juvenile's commands to stand next to the bureau, pull down his pants, and perform oral sex on the juvenile because he was frightened and did not want to risk disobeying the juvenile's instructions. On the day after the incident, the victim displayed his immaturity by asking, "Well,

what does it mean when someone tries to put their private into your butt?" Given this, the juvenile's characterization of the incident as that of consensual sexual experimentation is unavailing.

The juvenile's arguments are unable to overcome the presumption that the Legislature acted reasonably and rationally in imposing strict liability for anyone who has sexual intercourse with a child under the age of sixteen. There is a rational basis for protecting all children from sexual abuse, whether the offender is an adult or a juvenile under the age of sixteen.

b. <u>Arbitrary enforcement challenge</u>. The juvenile argues also that G. L. c. 265, § 23, is unconstitutionally vague within the meaning of the due process clause of the Fourteenth Amendment to the United States Constitution. "The principles of the vagueness doctrine are well settled in our law." <u>Commonwealth</u> v. <u>Reyes</u>, 464 Mass. 245, 248 (2013). Due process requires that criminal statutes "define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." <u>Skilling</u> v. <u>United States</u>, 561 U.S. 358, 402-403 (2010), quoting <u>Kolender</u> v. <u>Lawson</u>, 461 U.S. 352, 357 (1983). See <u>Grayned</u> v. <u>Rockford</u>, 408 U.S. 104, 108 (1972); <u>Commonwealth</u> v. <u>Quinn</u>, 439

Mass. 492, 499-500 (2003).  With respect to arbitrary enforcement, the United States Supreme Court has observed that "the most meaningful aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine -- the requirement that a legislature establish minimal guidelines to govern law enforcement."  Smith v. Goguen, 415 U.S. 566, 574 (1974).  See Kolender v. Lawson, supra at 358 ("where the [L]egislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections" [quotation and citation omitted]); Commonwealth v. McGhee, 472 Mass. 405, 414 (2015) (lack of reasonable guidelines for law enforcement encourages arbitrary arrests and prosecutions).  "It is well established that vagueness challenges to statutes which do not involve . . . freedoms [under the First Amendment to the United States Constitution] must be examined in light of the facts of the case at hand."  Gallant, 373 Mass. at 581, quoting United States v. Powell, 423 U.S. 87, 92 (1975).  See Commonwealth v. Adams, 389 Mass. 265, 271 (1983).  See also Bohmer, 374 Mass. at 371 n.6 (1978) ("In the context of a vagueness challenge, the defendants have no standing to assert the rights of others").

In Commonwealth v. Williams, 395 Mass. 302, 303-306 (1985), for example, we considered a due process challenge on vagueness

grounds to the city of Boston's "sauntering and loitering" ordinance. The ordinance prohibited sauntering and loitering "in such a manner as to obstruct . . . travellers." Id. at 305. We concluded that the ordinance was unconstitutionally vague and arbitrary because it failed to set "minimal guidelines to govern law enforcement." Id. at 306. Without standards to "distinguish between the lawful conduct of mere sauntering and loitering and that which escalates to obstructing travelers," police officers possessed unfettered discretion to decide which individuals to charge. Id. See Kolender v. Lawson, 461 U.S. at 360-361 (statute requiring individuals to carry "'credible and reliable' identification" unconstitutionally vague on its face "because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect may do in order to satisfy the statute"); Papachristou v. Jacksonville, 405 U.S. 156, 167-171 (1972) (vagrancy ordinance void for vagueness due to broad scope and imprecise terms); Commonwealth v. Sefranka, 382 Mass. 108, 110 (1980) (term "lewd, wanton and lascivious person" unconstitutionally vague).

The juvenile's challenge on vagueness grounds focuses on the potential for arbitrary enforcement of the statutory rape statute. He points out that, in instances of peer-aged, consensual sexual experimentation, the line between victim and offender is blurred. He argues that, because this case involved

an incident of sexual experimentation, the Commonwealth's decision only to charge one of the willing participants with a criminal offense "is the very definition of discriminatory enforcement."

The Commonwealth points out, correctly, that the juvenile is unable to demonstrate arbitrary enforcement in this case, involving a frightened eight year old being compelled by the commands of an individual four years his senior.  As the Commonwealth puts it, the juvenile's labeling of himself as both offender and victim "is belied by the inconvenient facts of the case."  We discern no hint of arbitrary enforcement here, because the prosecutor reasonably could have concluded that the juvenile was not a victim of a sexual assault.  Not only was there a four-year age gap between the juvenile, a seventh grader, and the victim, a third grader, but the juvenile initiated the encounter by instructing the victim to go where they would not be seen from the doorway.  The juvenile then ordered the victim to pull down his pants and to engage in oral and then anal intercourse.  The victim testified at different points that, although he complied with the juvenile's commands, he did not want to "do that," he was afraid of what the juvenile would do to him if he did not comply, he was "scared," and he was "shivering."

We are not persuaded by the cases from other jurisdictions upon which the juvenile relies. See B.B. v. State, 659 So. 2d 256 (Fla. 1995); In re D.B., 129 Ohio St. 3d 104, cert. denied, 565 U.S. 1100 (2011); In the Interest of B.A.M., 806 A.2d 893 (Pa. Super. Ct. 2002); In re G.T., 170 Vt. 507 (2000).  We note, first, that these decisions are inapposite, as they involve consensual sexual relations between peer-aged minors.  In one case, the Supreme Court of Florida found that an adjudication of delinquency violated the juvenile's constitutional privacy interests "as applied to this [sixteen year old]."  See B.B., 659 So. 2d at 260.  In so holding, the court noted that the State's sole interest was protecting the sixteen year old victim from "the sexual activity itself," as opposed to protecting her from sexual exploitation.  Id. at 259-260.  In another such case, an intermediate Pennsylvania appellate court vacated an adjudication of delinquency after concluding that a statute designed to protect younger children from exploitation was not intended to permit punishment of only one of two eleven year old boys, who both willing participated in experimental sexual intercourse.  See In the Interest of B.A.M., 806 A.2d at 894, 898.  Similarly, the Supreme Court of Vermont's holding in In re G.T., 170 Vt. at 516-518, is inapplicable to nonconsensual or coerced sexual acts.[8]  We note also that, in another case where

[8] The reasoning in another case cited by the juvenile, In re

the facts are similar to the situation here, the court in the other jurisdiction reached a conclusion similar to the one that we reach in this case.  See State v. Colton M., 366 Wis. 2d 119, 128-129 (Ct. App. 2015) (rejecting juvenile's arbitrary enforcement claim where "record indicate[d] [the victim] was an unwilling participant that had to be bribed, coerced, or otherwise forced into sexual contact").

Although we agree with the juvenile's observation that it is possible that a juvenile under the age of sixteen could be both a victim and an offender in a statutory rape case, those circumstances are not presented here.

c.  Selective enforcement challenge.  In addition, the juvenile also raises an equal protection claim.  He argues that he and the victim were similarly situated as children under the age of sixteen engaged in consensual acts of sexual experimentation.  In this view, the Commonwealth's decision to single him out for prosecution violated his equal protection rights secured by the Federal and State Constitutions.  See Commonwealth v. Franklin Fruit Co., 388 Mass. 228, 229-230

---

D.B., 129 Ohio St. 3d at 104-105, 108-109, is unclear.  In that case, the Supreme Court of Ohio declared that a prosecutor's decision to charge a juvenile was "the very definition of discriminatory enforcement," but did not discuss the factors that went into that decision.  See id. at 109.  Compare In re Welfare of B.A.H., 845 N.W.2d 158, 164 n.4 (Minn.), cert. denied, 135 S. Ct. 208 (2014) (declining to follow reasoning of In re D.B. because Ohio court did not address reason that prosecutor's charging decision was discriminatory).

(1983) (selective enforcement prohibited by Fourteenth Amendment and arts. 1 and 10 of Massachusetts Declaration of Rights).

A district attorney is vested with "wide discretion in determining whether to prosecute an individual." Commonwealth v. Washington W., 457 Mass. 140, 142 (2010), quoting Bernardo B., 453 Mass. at 167. "This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the [g]overnment's enforcement priorities, and the case's relationship to the [g]overnment's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." Wayte v. United States, 470 U.S. 598, 607 (1985).

Nonetheless, a prosecutor does not possess unbridled authority to charge a citizen with a crime. Wayte, 470 U.S. at 608. "While some selectivity is permissible in criminal law enforcement, the Federal and Massachusetts Constitutions guarantee that the government will not proceed against an individual based on an unjustifiable standard such as race, religion, or other arbitrary classification" (quotation and citation omitted). Washington W., 457 Mass. 140, 142. See Franklin Fruit Co., 388 Mass. at 229-230; Commonwealth v. King, 374 Mass. 5, 20 (1977). It is the judiciary's "solemn duty" to

redress prosecutorial overreaching. Bernardo B., 453 Mass. at 161.

In Bernardo B., 453 Mass. at 168, we explained that a defendant raising "a collateral attack on prosecutorial decision-making" is required to make a "rigorous" showing in order to overcome "the presumption of prosecutorial regularity." Thus, the defendant bears the initial burden to "raise[] at least a reasonable inference of impermissible discrimination, including evidence that a broader class of persons than those prosecuted violated the law, . . . that failure to prosecute was either consistent or deliberate, . . . and that the decision not to prosecute was based on an impermissible classification such as race, religion, or sex" (quotation and citation omitted). Id. If a defendant meets this prima facie showing, the case must be dismissed unless the Commonwealth is able to rebut the inference of selective prosecution. Id. A defendant raising a selective prosecution claim may do so "by introducing statistical evidence or other data demonstrating that similarly situated suspects or defendants are treated differently by the prosecutor on the basis of impermissible categorizations." Id.

Ordinarily, a defendant makes a threshold showing of selective prosecution before trial, and seeks discovery from the Commonwealth in order to advance his or her claim. See Commonwealth v. Lora, 451 Mass. 425, 442 (2008). In

Bernardo B., 453 Mass. at 170, we addressed an allegation of gender-based selective prosecution where "the boy and the three [female] complaining witnesses appeared to have engaged in mutually consensual acts of oral sex . . . [and] all four children were under the age of consent."  Based on the juvenile's threshold showing, we held that the juvenile was entitled to discovery in order to conduct a further investigation concerning his selective prosecution claim.  Id. at 175-176.

The juvenile raises his argument regarding selective prosecution for the first time on appeal.  Based on the evidence presented at trial, we conclude that he has not overcome the presumption that the prosecution was initiated in good faith. See Commonwealth v. Franklin, 376 Mass. 885, 894-895 (1978). Unlike the juvenile in Bernardo B., there is no showing here that the only distinction between the charged and uncharged participants in consensual sexual conduct was some type of impermissible classification such as gender, race, or religion. As stated, the trial record does not support the juvenile's contention that he and the victim were similarly situated children under the age of sixteen.  The record reveals that they were not.  The juvenile has not, therefore, raised a meritorious claim of selective prosecution.  We do not foreclose the possibility that, in some other case involving two juveniles, on

different facts, a juvenile might be able to present a valid claim of selective prosecution, but that is not this case.

<u>Judgment affirmed</u>.

GANTS, C.J. (concurring in the judgment).  Under G. L. c. 265, § 23, "[w]hoever unlawfully has sexual intercourse or unnatural sexual intercourse, and abuses a child under [sixteen] years of age, shall be punished by imprisonment in the [S]tate prison for life or for any term of years or, except as otherwise provided, for any term in a jail or house of correction."  Sexual intercourse with a child is a strict liability life felony that requires registration as a sex offender unless the sentencing judge relieves the defendant or delinquent child of the obligation to register.  See G. L. c. 6, § 178C (defining "sex offense" as, inter alia, "rape and abuse of a child under [§] 23"); G. L. c. 6, § 178E (f) (allowing judge to waive sex offender registration requirement where circumstances of offense and offender's criminal history indicate that offender "does not pose a risk of reoffense or a danger to the public").  In the absence of evidence of marriage,[1] statutory rape requires proof of only two elements:  "(1) sexual intercourse or unnatural sexual intercourse with (2) a child under sixteen years of age."

---

[1] A minor under the age of eighteen may lawfully marry in Massachusetts with the approval of a judge where the child's parents or legal guardian consent to the marriage.  See G. L. c. 207, § 25.  The word "unlawfully" in G. L. c. 265, § 23, suggests that sexual intercourse may be lawful where the defendant is legally married to the child under sixteen years of age.  See Commonwealth v. Chretien, 383 Mass. 123, 130 (1981) ("It is widely recognized that use of the word 'unlawful' in rape statutes signifies the incorporation of the common law spousal exclusion").

_Ante_ at    , quoting _Commonwealth_ v. _Bernardo B._, 453 Mass. 158, 172 (2009).  A defendant may not assert as a defense that he or she reasonably believed that the child was sixteen years of age or older, because the Legislature intended to exclude mistaken belief as to the age of the victim as a defense to the crime.  See _Commonwealth_ v. _Miller_, 385 Mass. 521, 523-524 (1982).  In essence, where an adult has sexual intercourse with a young person, the adult acts at his or her peril in the event the young person turns out to be less than sixteen years of age.  See _Commonwealth_ v. _Murphy_, 165 Mass. 66, 69-70 (1895).

Where a sixteen year old has sexual intercourse with a fifteen year old, there is no uncertainty in the law as to who has committed the rape and who is the victim of the rape, regardless of the circumstances of the sexual intercourse.  Even if the fifteen year old encouraged the sixteen year old to have sexual intercourse, only the sixteen year old has committed the crime; the law would not permit the fifteen year old to be charged with aiding and abetting the rape.  See _Gebardi_ v. _United States_, 287 U.S. 112, 123 (1932) ("It is not to be supposed . . . that the acquiescence of a woman under the age of consent would make her a co-conspirator with the man to commit statutory rape upon herself").  See, e.g., _United States_ v. _Amen_, 831 F.2d 373, 381 (2d Cir. 1987), cert. denied, 485 U.S. 1021 (1988) ("When Congress assigns guilt to only one type of

participant in a transaction, it intends to leave the others unpunished for the offense").  But if that same fifteen year old were to engage in sexual intercourse with another fifteen year old, that fifteen year old is no longer treated under the law as a victim.  Indeed, under § 23, both fifteen year olds would be guilty of rape and abuse of a child -- each is both a perpetrator of rape and a victim of rape, and their fate depends entirely on whom the prosecutor chooses to prosecute because conviction only requires proof of sexual intercourse.

The power of a prosecutor to determine who is a rapist and who is a victim in such circumstances is truly vast.  A survey conducted by the United States Centers for Disease Control and Prevention found that 24.1 per cent of ninth graders and 35.7 per cent of tenth graders reported having engaged in sexual intercourse.  See United States Centers For Disease Control and Prevention, United States Department of Health and Human Services, Youth Risk Behavior Surveillance -- United States, 2015, at 26 (2016), https://www.cdc.gov/healthyyouth/data/yrbs /pdf/2015/ss6506_updated.pdf [https://perma.cc/EH88-VFCZ]. Another study commissioned by the United States Department of Health and Human Services found that 8.1 per cent of females and 12.5 per cent of males between the ages of fifteen and seventeen reported having engaged in oral sex but not sexual intercourse. See Copen, Chandra, & Martinez, United States Department of

Health and Human Services, Prevalence and Timing of Oral Sex with Opposite-Sex Partners Among Females and Males Aged 15-24 Years:  United States, 2007-2010, Nat'l Health Statistics Reports, no. 56, at 5 fig. 2 (2012), https://www.cdc.gov/nchs/data/nhsr/nhsr056.pdf [https://perma.cc/47QX-MXBD].  In Massachusetts, a 2015 report surveying middle and high school students found that 14.2 per cent of ninth graders and 30.6 per cent of tenth graders reported having had sexual intercourse. See Department of Elementary and Secondary Education & Department of Public Health, Health & Risk Behaviors of Massachusetts Youth, Executive Summary, at 60 (2015), http://www.mass.gov/eohhs/docs/dph/behavioral-risk/youth-health-risk-report-2015.pdf [https://perma.cc/XC68-B4Y6].  Notably, 23.8 per cent of the surveyed tenth graders reported having had sexual intercourse in the last three months.  See id.  The most common age of students enrolled in tenth grade in the United States is fifteen.  See J.W. Davis & K. Bauman, School Enrollment in the United States:  2008, at 6 (2011), https://www.census.gov/prod/2011pubs/p20-564.pdf [https://perma.cc/2YYJ-YZDA] ("modal grade for [fifteen year olds] is tenth grade").[2]

---

[2] See J.H. v. Commonwealth, 479 Mass. 285, 292 n.3 (2018), citing United States Centers for Disease Control and Prevention, Substance Use and Sexual Risk Behavior Among Teens (2017), https://www.cdc.gov/healthyyouth/substance-use/pdf/dash-

To be sure, some ninth and tenth graders are older than sixteen, and these studies are silent as to whether the sexual partners of these students were under or over sixteen years of age.  But we need not determine the precise percentage of Massachusetts children under sixteen years of age who have had sexual intercourse with another child who is under sixteen years of age to recognize that, conservatively estimated, prosecutors potentially have the ability to prosecute at least one in five ninth and tenth graders for rape and abuse of a child.

The court, in evaluating whether § 23 is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, appropriately recognizes that the void-for-vagueness doctrine encompasses two separate concerns:  (1) fair notice, and (2) arbitrary and discriminatory prosecutions.  "To satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement."  Skilling v. United States, 561 U.S. 358, 402-403 (2010), quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983).  "Although the doctrine

_____

substance-use-fact-sheet.pdf [https://perma.cc/Z4H6-TL9P] ("According to the 2015 National Youth Risk Behavior Survey . . . [forty-one per cent] of high school students have . . . had intercourse and [thirty per cent] of high school students are currently sexually active").

focuses both on actual notice to citizens and arbitrary enforcement," the United States Supreme Court has recognized "that the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine -- the requirement that a legislature establish minimal guidelines to govern law enforcement." Kolender, supra at 357-358, quoting Smith v. Goguen, 415 U.S. 566, 574 (1974). "Where the [L]egislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" Kolender, supra at 358, quoting Smith, supra at 575. See Commonwealth v. Gallant, 373 Mass. 577, 580 (1977) ("laws must provide explicit standards for those who apply them" in order to avoid arbitrary and discriminatory enforcement [citation omitted]).

Generally, the concerns about fair notice and arbitrary and discriminatory enforcement go "hand in glove." For example, where a statute made it a crime to fail to give a "'credible and reliable' identification" to a police officer, Kolender, 461 U.S. at 353, the Supreme Court noted that the statute "vest[ed] virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute and must be permitted to go on his way in the absence of probable cause to arrest," id. at 358, and "confer[red] on police a virtually

unrestrained power to arrest and charge persons with a violation."  Id. at 360, quoting Lewis v. New Orleans, 415 U.S. 130, 135 (1974) (Powell, J., concurring in result).  Where another statute made it a crime to "saunter[] and loiter[] 'in such a manner as to obstruct . . . travellers'" (citation omitted), Commonwealth v. Williams, 395 Mass. 302, 305 (1985), we noted that the statute both "fail[ed] to provide a person of common intelligence with sufficient notice of the offending conduct," id., citing Papachristou v. Jacksonville, 405 U.S. 156, 164-165 (1972), and "fail[ed] to set minimal guidelines to govern law enforcement."  Id. at 306.  Here, however, the statute provides fair notice; any sexual intercourse with a person under the age of sixteen is a rape.  But the clarity of the crime does not obviate the danger of arbitrary and discriminatory enforcement where both participants in the sexual intercourse are under the age of sixteen, and are therefore both rapists and rape victims.

Historically, the crime of statutory rape used gender to distinguish the perpetrator of the rape (the male) from the victim of the rape (the female); until 1974, when G. L. c. 265, § 23, was amended, only sexual intercourse with "a female child under 16 years of age" was a crime.  Compare St. 1974, c. 474, § 3, with St. 1966, c. 291.  The 1974 amendment removed the word "female" and thereby eliminated any reference to the gender of

the victim in order to further the Legislature's interest in protecting all children from sexual abuse.  See Bernardo B., 453 Mass. at 171.  But the Legislature's salutary interest in gender neutrality left no guidelines in § 23, not even minimal guidelines, as it is currently interpreted, to guide police and prosecutors in distinguishing the perpetrator of the rape from the victim of the rape when both participants in the sexual intercourse are under the age of sixteen.

I emphasize the phrase "as it is currently interpreted" because the language of § 23 does provide a means clearly to distinguish the perpetrator of the rape from the victim, in that § 23 provides that "[w]hoever unlawfully has sexual intercourse or unnatural sexual intercourse, and abuses a child under [sixteen] years of age, shall be [guilty of a life felony]." (emphasis added).  Generally, it is a "cardinal principle" of statutory construction that courts "must give effect, if possible, to every clause and word of a statute" (citation omitted).  Loughrin v. United States, 134 S. Ct. 2384, 2390 (2014).  See, e.g., Advocate Health Care Network v. Stapleton, 137 S. Ct. 1652, 1659 (2017) (noting that "surplusage canon" presumes "that each word [the Legislature] uses is there for a reason"); Matter of Civil Investigative Demand Addressed to Yankee Milk, Inc., 372 Mass. 353, 358 (1977) ("established principle of statutory construction that every word in a statute

should be given meaning"); Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth., 352 Mass. 617, 618 (1967) ("[n]one of the words of a statute is to be regarded as superfluous, but each [word] is to be given its ordinary meaning . . . so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature" [citation omitted]). If we were to comply with this "cardinal principle" of statutory construction, a required element of proof for the crime of statutory rape would be a finding of "abuse."

I recognize that we have not followed this "cardinal principle" with respect to this crime, and have not required proof of "abuse" as an element of the crime. Our case law makes clear that, where the accused is over the age of sixteen, the prosecution need prove only the elements of sexual intercourse and the age of the victim, and need not prove a separate element of abuse. See, e.g., Commonwealth v. Knap, 412 Mass. 712, 714 (1992); Commonwealth v. Dunne, 394 Mass. 10, 18 (1985); Miller, 385 Mass. at 522. The explanation derives from the historical evolution of the statute. In 1692, the statute made it a crime punishable by death "[i]f any man shall unlawfully and carnally know and abuse any woman child, under the age of ten years." See Province Laws 1692-1693, c. 19, § 12. Where the crime is

defined as carnal intercourse between a "man" and a girl under the age of ten years, it is understandable why courts did not read the statute to require a separate finding of abuse, because abuse would inevitably be suffered by a girl under the age of ten from sexual intercourse with a "man."  See Black's Law Dictionary 746 (1st ed. 1891) (defining "man" as "male of the human species above the age of puberty"); Black's Law Dictionary 11 (2d ed. 1910) (defining "abuse . . . of a female child" as "[a]n injury to the genital organs in an attempt at carnal knowledge [i.e., sexual intercourse], falling short of actual penetration. . . .  But, according to other authorities, 'abuse' is here equivalent to . . . rape").  Between 1886 and 1898, the Legislature increased the age of consent from ten to thirteen, then to fourteen, and then to sixteen years of age.  Bernardo B., 453 Mass. at 171.  But the language of the statute -- "carnally know and abuse any woman child" -- was not altered.  Nor did this language change when the statute was amended in 1886 to delete "[i]f any man" and replace that phrase with "[w]hoever," which broadened the scope of potential perpetrators beyond post-pubescent "men."  St. 1886, c. 305.  Nor did this language change in 1974 when the word "female" was deleted, so that sexual intercourse with any child, male or female, under the age of sixteen became statutory rape.  In essence, "abuse" was not interpreted to be a separate element because the act of

sexual intercourse with a child alone was understood to constitute abuse, so abuse was implied as a matter of law.

This interpretation of the statute is permissible where the defendant is over sixteen years of age and the victim is under sixteen, because it is plain then who is the perpetrator of the rape and who is the victim. But this interpretation cannot survive where both participants in the sexual intercourse are under sixteen, because that would mean that, as a matter of law, both are deemed to have been abused. Where the Legislature explicitly provides that the crime of statutory rape requires the abuse of a child, and where such abuse is not implicit in the act of sexual intercourse when both participants are under the age of sixteen, it is reasonable in these circumstances to require a finding of abuse as a separate and distinct element of the crime of statutory rape. With such an element, the risk of arbitrary enforcement that arises from the absence in § 23 of even minimal guidelines to govern law enforcement when both participants in the sexual intercourse are under sixteen would be eliminated and the statute would be saved from constitutional infirmity.

Because this would be a new interpretation of § 23, I would require proof of the element of "abuse" only prospectively, applying this requirement only to trials or pleas commenced after the date of this opinion. I note that, although this is a

new interpretation of the elements of proof required to prove a violation of § 23 where both participants in the sexual intercourse are under the age of sixteen, I am aware of no statutory rape case in Massachusetts where both participants in the sexual intercourse were under the age of sixteen in which we were asked to consider whether abuse is implicit in the act of intercourse or must separately be proved under § 23.  The interpretation of the statute that treats the phrase "abuses a child" as meaningless surplusage or as implied as a matter of law has never before been analyzed by this court in this context.

I concur in the judgment rather than dissent because I agree with the court that, based on the facts of this case, there is "no hint of arbitrary enforcement here, because the prosecutor reasonably could have concluded that the juvenile was not a victim of a sexual assault." Ante at    .  The prosecutor charged the twelve year old juvenile with forcible rape of an eight year old.  Although the jury did not find the juvenile to be delinquent on that charge, and instead found him delinquent on the lesser included charge of statutory rape, the evidence was sufficient to support a finding of forcible rape.  I do not suggest that proof of force would be necessary for a finding of abuse.  But, where there is substantial evidence of the use of

physical or constructive force, the evidence would be more than sufficient to prove abuse.

It is worth noting that the court's analysis regarding arbitrary enforcement is inconsistent with an interpretation of § 23 that would conclude as a matter of law that <u>both</u> children have been abused solely because they engaged in the sexual intercourse. By distinguishing between the perpetrator and the "victim," the court is essentially recognizing that, where both children who engaged in sexual intercourse were under the age of sixteen, the prosecutor may only charge with rape the child who was not abused and may not prosecute the child who was abused. In essence, using the rubric of the "victim," the court is requiring something akin to substantial evidence of abuse as a necessary predicate for a prosecution in these circumstances, but is not requiring a finding of abuse as an element of the offense that must be found by a jury.

In sum, I agree with the court that, where both participants in the sexual intercourse are under the age of sixteen, the due process obligation to avoid arbitrary and discriminatory enforcement requires more than mere proof of sexual intercourse, which the court characterizes essentially as reasonable grounds to believe that the juvenile is the perpetrator rather than the victim. I differ with the court insofar as I would acknowledge that, in doing so, the court is

essentially recognizing that § 23 requires some finding of abuse where both participants in the sexual intercourse are under the age of sixteen, and that such a finding cannot be implied as a matter of law in such circumstances. And, where abuse cannot be reasonably implied as a matter of law, I would make abuse an element of the crime that must be found by a jury beyond a reasonable doubt, rather than ask a judge to determine whether a "prosecutor reasonably could have concluded that the juvenile was not a victim of a sexual assault."[3]

For all these reasons, I concur only in the judgment.

---

[3] I do not address the defendant's argument regarding selective enforcement because I agree with the court that there is no evidence of it in this case. The risk of arbitrary and discriminatory enforcement under the void-for-vagueness doctrine is a due process claim; a claim of selective enforcement asserts an equal protection claim, and is subject to equal protection analysis. See Commonwealth v. Bernardo B., 453 Mass. 158, 168-169 (2009). "To bring a claim of selective prosecution successfully, the defendant bears the initial burden to 'present evidence which raises at least a reasonable inference of impermissible discrimination,' including evidence that 'a broader class of persons than those prosecuted violated the law, . . . that failure to prosecute was either consistent or deliberate, . . . and that the decision not to prosecute was based on an impermissible classification such as race, religion, or sex.'" Id. at 168, quoting Commonwealth v. Lora, 451 Mass. 425, 437 (2008). We have considered claims of selective prosecution where there was evidence that the prosecution engaged in impermissible discrimination based on race, see Lora, supra at 436-439; gender, see Bernardo B., supra at 173; and sexual orientation, see Commonwealth v. Washington W., 457 Mass. 140, 147 (2010). The juvenile here presents no evidence that his prosecution in this case was influenced by his race, gender, or sexual orientation, or by any other impermissible classification.